THE COMMISSIONERS OF JEFFERSON COUNTY, PLAINTIFFS IN ERROR, v. THE PEOPLE EX REL. N. K. GRIGGS, DEFEND-ANT IN ERROR.

1. **County Bonds:** CONSTITUTIONAL LAW: SPECIAL LEGISLATION. The legislature of 1875 passed an act "authorizing the county commissioners of Jefferson county to provide funds for the pay-ment of certain outstanding warrants of said county," by issuing bonds, selling the same, and using the proceeds in payment of warrants issued to contractors for the erection of a court house and jail: *Held*, that the commissioners having express authority, under the statutes then in force, to contract for the erection of said buildings, and the county being justly indebted therefor, the legislature had full constitutional power to pass the act in question.

ERROR to the district court for Jefferson county. The commissioners of that county in May, 1872, entered into a contract with certain parties for the erection of a court house and jail. In part payment thereof they issued warrants to the contractors upon the court house fund levy of that year. In April, 1873, this levy was stricken from the assessment roll by order of the commissioners, and the county treasurer instructed to return all moneys collected by virtue of said tax to the persons having paid the same. In 1875, the legislature passed the special act set forth in the opinion. Prior thereto the warrants re-ferred to had been assigned to N. K. Griggs, and the commissioners refusing to issue the bonds required by the act, he brought an action of mandamus against them. Judgment below was rendered in his favor, to reverse which the commissioners came here on petition in error.

*Brown, England & Brown*, for the commissioners.

I. The legislature, in passing the law under which this proceeding is brought, and particularly that portion of the

act which declares the warrants therein mentioned to be valid and binding upon the said county, and finds specifically the amount due upon them, and the manner in which they should be paid, exercised judicial power. It is a usurpation of judicial authority incompatible with the spirit of our government.    To adjudicate upon and protect the rights and interests of individuals, to compare the claims of contending parties, and to decide private disputes between them according to the established rules of law, is the peculiar and exclusive province of the judicial department. *Cincinnati etc. R. R. Co. v. Com'rs Clinton Co.*, 1 O. S., 81.    *People v. Supervisors of New York*, 16 N. Y., 432.    *State v. Adams*, 44 Mo., 570. *Ervine's Appeal*, 16 Penn. State, 266.    *Greenough v. Greenough*, 11 Penn. State, 494.

If the act to be performed is the settlement of a claim between contending parties, if it determines or tends to determine disputes between individuals, it is necessary, in order to make such settlement or determination understandingly, to give the parties a chance to be heard, and this can be done only in the courts. The act in question is in the nature of a judicial decree. It finds: *first*, that certain warrants are valid and binding upon said county; *second*, the amount due upon each of said warrants; and *third*, it authorizes and requires the commissioners to bond the county of Jefferson, and dispose of the bonds at ninety cents on the dollar, and with the money thus realized pay these warrants and interest in full.    Whether these warrants were "*valid and binding*" on said county depends upon the *construction* of the law as it stood when the act was passed.    The amount due upon each of these warrants could only be ascertained by an inquiry into, and a determination of facts between debtor and creditor.    As to the bonding that can only be compelled by an absolute despotism, and justified only on the ground that might makes right.

II. We are aware that by virtue of the authority which the legislature has over municipal corporations, it may compel them to raise the necessary means by tax to meet and discharge the obligations properly resting upon them as such, whether they be legal or merely equitable or moral. But we submit that when a demand is asserted against a municipality, though of a nature that the legislature would have a right to require it to incur and discharge, yet if its legal and equitable obligation is disputed, the corporation has the right to have the dispute settled by the courts and cannot be bound by a legislative allowance of the claim. *People v. Haws*, 37 Barb., 440. *Sanborn v. Rice County*, 9 Minn., 273. *Commonwealth v. Pittsburg*, 34 Penn. St., 496. *Plimpton v. Somerset*, 33 Vt., 283. Cooley's Constitutional Limitations, 232-3.

III. The act in question does not purport to legalize the acts of commissioners in issuing these warrants. It simply declares that the warrants are valid and binding upon said county. It cures no defects, dispenses with no formalities, takes away no defenses however technical. It is simply the opinion of the legislature that the warrants are valid and binding upon said county. And it is now insisted that this opinion is conclusive on this court. But we submit that such is not the case. We say that the legislature cannot compel the courts to adopt a particular construction of a law which it permits to remain in force. *Postmaster-General v. Early*, 12 Wheat., 148. *Haley v. Philadelphia*, 68 Pa. St., 45. *Salters v. Tobias*, 3 Paige, Ch., 338. *People v. Supervisors of New York*, 16 N. Y., 424. Cooley's Const. Lim., 94.

*E. Wakeley* and *N. K. Griggs*, for defendant in error.

I. By the statutes in force in 1872 (revised statutes of 1867, page 42, Sec. 28), the commissioners had express

power to provide for the erection of county buildings and enter into contract therefor.

There being no limitation either express or implied, upon the amount which they might contract to pay for such buildings, and no restriction upon their power to enter into contract therefor, the contract with Dort & Watson was valid. *Kinsey v. Pulaski County*, 2 Dillon C. C., 253. "When power is given to a corporation to do an act, it has a right to do whatever is necessary to accomplish the act." *Ketchum v. City of Buffalo*, 14 N. Y., 356. *Douglass v. Mayor, etc., of Virginia City*, 5 Nev., 147. *People v. The Supervisors of Albany*, 28 Howard's Prac., 22. *First Municipality of New Orleans v. McDonough*, 2 Rob. (La.), 244. *Bank of Chillicothe v. The Town of Chillicothe*, 7 Ohio, 354. *Curtis v. Leavitt*, 15 N. Y., 9. *Mills v. Gleason*, 11 Wis., 470. *State v. Milwaukee*, 25 Wis., 122. Dillon Munic. Cor., 92, 407 (n), 685 (n).

II.    The commissioners were expressly authorized by statute to consider, determine and allow claims against the county, for, or growing out of, matters within their jurisdiction (Revised Statutes, 1867, page 37); and persons having claims against the county, should present them to the commissioners for allowance before suit should be brought to recover thereon. *Luzerne v. Day*, 23 Penn. St., 141. *Love v. Commissioners*, 64 N. C., 706.

That the commissioners had power to determine and adjust the claims of the contractors for work, and allow a claim or account therefor, and were the special tribunal empowered by law so to do, seems very clear. If errors were committed by them, so long as they acted within their jurisdiction, they could be corrected only by appeal, or at the most by some direct proceeding. Their action cannot be attacked or inquired into collaterally. In this

The Commissioners of Jefferson County v. The People.

case they had power to modify the contract—to enlarge the time of completion—to vary the time or terms of payment with the consent of the contractors—to pay a given amount for the work already done—or pay in advance of the time fixed by the contract for some portion of the work. Hence, the action of the board in November, 1872, was a determination that the amount then allowed, and for which warrants were issued, was due and payable to the contractors. This was a judicial determination and is binding upon the county. *Brewer v. Otoe County*, 1 Neb., 373. *Chase v. Saratoga county*, 33 Barb., 603.

III. The plaintiff in error claims that the act of February 2, 1875, is unconstitutional. It is for the person making the charge to show where the act violates the provisions of the constitution. An act will not be held unconstitutional unless it clearly appears to be so. Dillon's Mun. Cor., Sec. 38. Cooley's Con. Lim., 173. *The People v. Denniston*, 23 N. Y., 247, 251.

IV. Whether or not the commissioners had the authority to issue the warrants, still the legislature had the power to, and did legalize them by retroactive act. The legislature might have authorized the levy of the tax and the issue of the warrants in the first instance; if so, it may legalize them after they are issued. Any act which the legislature may authorize it may by retroactive legislation legalize. Cooley's Con. Lim., Secs. 372–382. *Satterlee v. Mathewson*, 2 Peters, 380. *Bissell v. City of Jeffersonville*, 24 Howard, 287. *Thomson v. Lee County*, 3 Wall., 327. *The City v. Lamson*, 9 Wall., 477. *St. Joseph Township v. Rogers*, 16 Wall., 644. *McMillen v. County Judge*, 6 Iowa, 304. *The State v. Squires*, 26 Iowa, 340.

MAXWELL, J.

Under the issue presented by the pleadings, it is only necessary for us to determine, whether the legislature had authority to pass the special act, approved February 2, 1875, or not.

The act in question provides :   "That the county commissioners of the county of Jefferson are hereby authorized and required, on or before the first day of April, 1875, to prepare in due form, and cause to be printed in proper style, a sufficient amount of bonds of said county, which, when sold as hereinafter mentioned, will realize a sufficient amount to pay off the outstanding 'Court-House Fund' warrants, with the interest thereon, mentioned in section four of this act.

" Such bonds shall be for the payment, by the county of Jefferson, of the sums specified therein, and shall be each in amount not to exceed five hundred dollars; shall run not more than five years from the first day of April, 1875, and shall draw interest at the rate of ten per cent per annum, payable annually; said bonds together with the interest due thereon, shall be made payable in the city of New York.   Said bonds shall be signed by the chairman of the board of county commissioners, and.countersigned by the county clerk of said county.

" The county commissioners of said county of Jefferson shall levy a tax at the time other taxes are levied in the year A. D. 1875, and annually thereafter, sufficient to pay the interest on said bonds when the same becomes due, and they shall also make provision by the levying of taxes for the payment of the principal of said bonds, on or before maturity thereof.

" Said bonds shall be issued by the said board of county commissioners, and shall be sold under their direction, at not less than ninety cents on the dollar.   The money arising from the sale of said bonds shall constitute a

fund for the payment of the following county warrants and interest thereon, issued by said county of Jefferson upon the 'Court-House Fund' of said county, which said warrants are hereby declared to be valid and binding upon said county."

In *Darlington v. The Mayor*, etc., 31 N. Y., 164, the court say : " Let us suppose the city to be the owner of a parcel of land, not adapted to any municipal use; but valuable only for sale to private persons for building purposes, and the like. No one, I think, can doubt but what it would be competent for the legislature to direct it to be sold, and the proceeds devoted to some municipal or other public purpose within the city, as a court-house, a hospital, or the like."

In *Brewster v. The City of Syracuse*, 19 N. Y., 116, the parties had contracted to construct a sewer for the city for an agreed price, which had been fully paid. The city charter prohibited the payment of extra compensation to contractors in any case. The legislature afterwards passed an act authorizing the city council to collect, and pay to the contractor, the further sum of $600.00, in addition to the contract price. The court held the act constitutional.

In *Thomas v. Leland*, 24 Wend., 65, where certain parties had given a bond to the state conditioned to pay the difference in the cost of constructing the Chenango canal, in making connection with the Erie canal at the city of Utica, instead of Whitestown, as originally intended, afterwards the legislature passed an act requiring the sum due to be levied on the real estate of the city of Utica; the court *held:* "The general purpose of raising the money by tax was to construct a canal, a public highway, which the legislature believed would be a benefit to the city of Utica as such; and, independently of the bond, the case is the ordinary one of local taxation to make or improve a highway. If such an act be otherwise constitutional,

we do not see how the circumstance that a bond had been given, securing the same money, can detract from its validity. Should an individual volunteer to secure a sum of money in itself properly leviable by way of tax on a town or county, there would be nothing in the nature of such an arrangement which would preclude the legislature from resorting, by way of tax, to those who are primarily, and more justly liable."

In *Kirby v. Shaw*, 19 Penn. State, 258, where, under an act of the legislature, approved April 3, 1848, the commissioners of Bradford county were required to add $500.00 annually, until 1857, to the ordinary taxes of the borough of Towanda, for the purpose of erecting a court-house and jail in that borough, the act was held to be constitutional.

In the case of *Miller and Swan v. Graham and Smith*, 17 Ohio State, 1, where, under the act of March 24, 1859, "To provide for locating, establishing, and constructing ditches, drains, and water-courses," the defects and errors in the proceedings were fatal to their validity; but, after the taking effect of the act of March 24, 1864, supplementary to the act of March 24, 1859, the court refused to enjoin the collection of an assessment to pay for making a ditch, but remanded the cause to the district court, with instructions to permit the parties to show wherein they had been injured by the failure of the commissioners to comply with the law.

The answer in the case states:

1st. That the writ does not state facts sufficient to authorize a recovery.

2d. That the act of February 2, 1875, is unconstitutional and void.

3d. That the warrants in question were issued without authority of law, and without any consideration, and are fraudulent and void.

4th. That, on the twelfth day of May, 1873, the

relator commenced an action on the warrants in question in the district court of Jefferson county, to which the defendants filed an answer, setting up a perfect defense.

The action referred to was dismissed without prejudice, on the twelfth day of May, 1875.

Section 28, chapter 9, revised statutes of 1866, in force at the time this contract was entered into, provides that "said commissioners shall have authority and power to provide for the erection and repairing of court-houses and jails, and other necessary buildings for the use of the county; and to carry out the provisions of this section, they shall have power to make contracts, on behalf of the county, for the building and repairing of the same." The authority to make the contract in question is here explicitly given, and, so far as the record discloses, there has been no abuse of that authority. There is nothing in the record to show the valuation of the real and personal property of Jefferson county, for the year 1872; nor are we informed of the amount required to be raised by taxation for "ordinary county revenue," for that year; although there was levied for "county general fund" six mills on the dollar, for "court-house fund" five mills on the dollar, etc. There is no such fund known to the law as the "court-house fund." Buildings of this kind should be paid for out of the fund derived from "ordinary county revenue," and, so far as the record discloses, warrants could have been drawn on that fund for the amount due.

If any valid defense existed against the payment of these warrants, it should have been set up by a statement of the facts constituting the alleged defense in the answer in this action; but nothing of the kind is attempted. No issue is raised as to the amount due the contractors. The commissioners issued warrants for the amount they considered to be due, and no foundation is laid to disturb their finding.

'That Jefferson county is justly indebted to the relator for the amount of the warrants in question, will not be controverted; and, where such is the case, there is no doubt of the power of the legislature to require the county to issue its bonds for the amount of its indebtedness.

The provisions of the law, that the bonds shall not be sold for less than ninety-cents on the dollar, are for the protection of the county; but it is the duty of the commissioners to sell the bonds for the highest price that can be obtained.

The judgment of the district court is clearly right, and must be affirmed.

JUDGMENT AFFIRMED.