## SHERMAN COUNTY *v.* SIMONS.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF NEBRASKA.

Submitted December 10th, 1883.—Decided January 7th, 1884.

*Estoppel—Municipal Bonds—Municipal Corporations—Nebraska.*

1. A *bona fide* holder for value before maturity of a bond issued by a county is not bound to go behind the recitals in the bond to inquire whether the amount of the indebtedness of the corporation exceeds that authorized by law.

2. When a statute directs an officer to examine and determine the amount of the indebtedness of a county, for the purpose of further determining the amount of bonds to be issued by the county for a given purpose, and the officer performs the duty, the county cannot, in a suit by a holder of a bond issued as a result of the exercise of the power by the officer, set up that the finding was not true.

3. When the legislature of Nebraska authorized a county which was indebted to issue bonds for the amount of the indebtedness, that act was no infringement of the provision in the State Constitution then in force that, "the legislature shall pass no special act conferring corporate powers." The case of *Commissioners of Jefferson County* v. *The People*, 5 Neb. 127, followed.

4. The issuing of bonds under such authority was no violation of the provision in the present Constitution of Nebraska, that the legislature shall not pass any local or special laws "granting to any corporation, association or individual any exclusive privileges, immunities, or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted." A county is not a corporation within the meaning of this clause. *Woods* v. *Colfax County*, 10 Neb. 552, followed.

The court made the following statement of the case on which its opinion is founded.

This was a suit brought on the coupons of certain bonds issued by the commissioners of Sherman County, in the State of Nebraska, dated January 1st, 1876, under an act of the legislature of that State approved February 18th, 1875, entitled "An Act to authorize the commissioners of the counties of Colfax, Platt, Boone, Antelope, Howard, Greeley, and Sherman to issue bonds for the purpose of funding the warrants and orders of said counties."

The act referred to authorizes the commissioners of each of

the counties named to issue bonds of the county, and to sell and negotiate the same for money, and declares that the proceeds arising therefrom shall be used for the redemption of all warrants and other evidences of indebtedness drawn on the treas-. urer of the county, which were outstanding at the date of the approval of the act, or might be outstanding prior to the first day of January, 1875. The act contained the following provisos:

"Provided that no more of the bonds authorized to be issued by virtue of this act shall be issued than is necessary to pay off and redeem such warrants so outstanding ; and provided further, that the said commissioners shall not issue of said bonds to exceed in value the amount of said indebtedness up to January 1st, 1875, nor shall said bonds be negotiated at a less price than eighty-five cents on the dollar."

The bonds recited on their face that they were issued by authority of said act.

The answer averred that bonds were issued under said act by the commissioners of said county of Sherman to the amount of $45,000, and that on January 1st, 1875, the debts of said county did not exceed the sum of $16,000, and that the said bonds were negotiated for less than eighty-five cents on the dollar. On this answer the plaintiff below took issue. The parties waived a trial by jury, and submitted the cause to the court, which made findings, from which the following facts appear :

On January 1st, 1876, the commissioners of Sherman County, in pursuance of the act of February 18th, 1875, issued among others the bonds and coupons described in the petition, and the same came into the possession of the plaintiff, who was a *bona fide* purchaser for value, without notice of defects other than appear on the face of the bonds, and was still the holder and owner of said bonds and coupons.

The record of the commissioners of Sherman County showed the allowance of $15,000 in claims against the county from the organization of the county to January 1st, 1875, for which warrants were drawn on the treasury, and no more, but they also showed that the commissioners at one of their meetings estimated the amount of the county indebtedness which might

be funded at the sum of $36,874.95, for which it would be necessary to issue bonds to the amount of $43,400, and that bonds were issued pursuant to such estimate, but it was not shown what the actual indebtedness of the county was at the time the bonds were issued.

Upon this finding the circuit court rendered judgment in favor of the plaintiff below for $5,671.60. To reverse that judgment this writ of error is prosecuted.

*Mr. Turner M. Marquette, Mr. Lewis A. Groff, Mr. C. S. Montgomery, Mr. Hamer,* and *Mr. Conner* for plaintiff in error.

*Mr. Nathan S. Harwood,* and *Mr. John H. Ames,* for defendants in error.

Mr. Justice Woods delivered the opinion of the court.

The plaintiff in error insists that the facts found by the court show an issue of bonds by the county in excess of the amount authorized by the statute, and that they are therefore void.

The defendant in error is found by the circuit court to be a *bona fide* holder for value. According to repeated decisions of this court, being such, he was not bound to go behind the law and the recital of the bonds to inquire into the amount of the county indebtedness. *Marcy* v. *Township of Oswego,* 92 U. S. 637; *Humboldt Township* v. *Long,* Ib. 642; *Wilson* v. *Salamanca,* 92 U. S. 499.

But if it be conceded that a purchaser of the bonds was required to inspect the records of the county to ascertain the amount of its indebtedness, and whether there had been an overissue of bonds, it appears from the findings of fact that the records of the commissioners contained an estimate of the indebtedness of the county made by them for the express purpose of fixing the amount of bonds to be issued, and in pursuance of which they were issued, which showed that there was no overissue.

This was a decision by the very officers whose duty it was under the law to fix the amount of bonds which could be lawfully issued. A purchaser of bonds was not required to make further inquiry, and if the finding of the commissioners was

untrue, he could not be affected by its falsity. See cases above cited ; also *Lynde* v. *The County*, 16 Wall. 6 ; *Commissioners* v. *January*, 94 U. S. 202 ; *County of Warren* v. *Marcy*, 97 U. S. 96 ; *Commissioners* v. *Bolles*, 94 U. S. 104 ; *Pana* v. *Bowler*, 107 U. S. 529.

The next contention of the plaintiff in error is that the act by which the issue of the bonds in suit was authorized was forbidden by section 1, article VIII., of the Constitution of Nebraska, which was in force at the date of the passage of the act. That section declares " the legislature shall pass no special act conferring corporate powers."

In the case of the *Commissioners of Jefferson County* v. *The People*, 5 Neb. 127, decided at the July term, 1876, the Supreme Court of Nebraska has conclusively settled this point against the plaintiff in error. In that case an act of the legislature, in all material respects similar to the act in question in this case, except that it related to but one county, was brought under consideration. The answer averred that the act was unconstitutional and void. Upon this point the court said :

" That Jefferson county is justly indebted to the relator for the amount of the warrants in question will not be controverted ; and when such is the case, there is no doubt of the power of the legislature to require the county to issue its bonds for the amount of its indebtedness."

The question raised by this contention was also considered by this court in the case of *Read* v. *Plattsmouth*, 107 U. S. 568. In that case an act of the legislature of Nebraska, approved February 18th, 1873, was brought under review. The preamble of the act recited that the city council of the city of Plattsmouth had issued and sold certain bonds, and with the proceeds thereof had proceeded to let the contract for the erection of a school-house, and had appointed two persons, naming them, superintendents of the construction of the same, and that the work on said building had commenced. The first section then declared that all the acts and proceedings of the city council in relation to issuing said bonds and letting said con-

tract and the appointment of said superintendents, and all matters and proceedings connected therewith, which might in any way affect the validity of said bonds, should be, and the same were, thereby legalized, confirmed, and made valid in law. This act was attacked as in violation of the same section of the Constitution which the plaintiff in error invokes in this case. It was contended that the act in question, by legalizing bonds of the city, was void, because it had no power to issue them, was legally equivalent to an act conferring upon the city power to issue bonds; which was conferring corporate power, and, being a special act, was therefore unconstitutional. But this court, speaking by Mr. Justice Matthews, said:

"As the city of Plattsmouth was bound by force of the transaction to repay to the purchaser of its void bonds the consideration received and used by it, or a legal equivalent, the statute which recognized the existence of that obligation, and, by confirming the bonds themselves, provided a medium for enforcing it according to the original intention and promises, cannot be said to be a special act conferring upon the city any new corporate powers. No addition is made to its enumerated or implied corporate faculties, no new obligation is, in fact, created."

And the court added that the very proposition there involved was maintained by the Supreme Court of Nebraska in the case of *Commissioners of Jefferson County* v. *The People*, 5 Neb. 127, above referred to. See also *Railroad Company* v. *County of Otoe*, 16 Wall. 667; *Foster* v. *Commissioners of Wood County*, 9 Ohio St. 540.

In the cases of *Clegg* v. *School District*, 8 Neb. 178, and *Dundy* v. *Richardson County*, Id. 508, cited by plaintiff in error, it was held that an act authorizing a school district or a city to contract a debt for the purpose of erecting a public building, and to issue bonds therefor, was forbidden by the Constitution because it was a special act conferring corporate powers. These cases are clearly distinguishable from those we have cited. In the latter, as in the case now under review, a debt already existed, and the statute simply authorized a change in the form of the obligation by which the debt was evidenced.

The distinction is clearly stated in *Read* v. *Plattsmouth, ubi supra*, the court remarking:

"The statute operates upon the transaction itself, which had already been consummated, and seeks to give it a character and effect different in its legal aspect from that which it had when it was in force;" and adds that such a result "is not affected by the supposed form of the enactment as a special or general act conferring corporate powers."

The cases cited effectually dispose of the point under consideration.

Lastly, the plaintiff in error contends that the act under which the bonds in suit were issued is repugnant to section 15, art. III., of the present Constitution of Nebraska, which went into effect November 1, 1875, after the law authorizing the issue of the bonds was passed, but before the bonds were issued. The section referred to declares:

"The legislature shall not pass any local or special laws in any of the following cases: . . . Granting to any corporation, association, or individual, any exclusive privileges, immunity, or franchise whatever. In all other cases, where a general law can be made applicable, no special law shall be enacted."

It is a sufficient answer to the contention to say that the word "corporation," as used in this section of the Constitution, does not apply to a county. If a county is a corporation at all, it is necessarily a municipal corporation. But the Supreme Court of Nebraska, in the case of *Woods* v. *Colfax County*, 10 Neb. 552, expressly held that in Nebraska, a county was not considered to be a municipal corporation. And it is clear that the authority given by the act of February 18th, 1875, to Sherman and other counties, to fund the indebtedness evidenced by county warrants, by giving their bonds in exchange therefor, does not of itself make them municipal corporations.

But it is unnecessary further to discuss this branch of the case. The decision of the Supreme Court of Nebraska in *The Commissioners of Jefferson County* v. *The People*, 5 Neb. 127, *ubi supra*, which, as before stated, was a case in all respects

similar to this, and in which the constitutionality of a similar act of the legislature was put in issue, is precisely in point and is conclusive of the question in hand.

We find no error in the record.

*The judgment of the circuit court is affirmed.*