Okbv, J.,
dissenting. 1. By the act of Eebruary 27,1885, “ to reorganize and consolidate cities of the first, grade of the second class (Columbus), and to reduce the ta<x levy of said cities” (82 Ohio L. 54), power is, in form, conferred upon the defendants and their associates to redistrict cities of the first grade of the second class into wards. As we will take judicial notice that Columbus is and will be, until April, 1887,'at least, the only city of that grade and class (The State v. Constantine, 42 Ohio St. 487; 3 Rev. Stats., § 1582; 1 Rev. Stats., §§ 1583-1588), the statute, in view of the time within which the prescribed services must be performed, embraces Columbus alone. The question is whether the provisions of the act, which in form confer such power, are valid and constitutional provisions; and this is the only question; for the only complaint in the petition for the writ of quo war *126 ranto is, that the defendants are proceeding- to perform the duties, which, in form, are devolved upon them by the act, and that the act is unconstitutional. While there is 'difference of opinion among the members of this court, whether or not this is a local and special act, there is no difference of opinion as to the validity of the provisions so assuming to confer power .upon the defendants and their associates. We are all of opinion that, standing alone, those provisions are constitutional and valid, and that, if the act contained no other provisions, it would be wholly free from constitutional infirmity. Indeed, there seems to be little ground for difference of opinion on that question. 1 Rev. Stats., §§ 1628-1632; 3 Rev. Stats., §§2715-2729f; The State v. The Judges, 21 Ohio St. 1; The State v. Covington, 29 Ohio St. 102 ; The State v. Baughman, 38 Ohio St. 455 ; The State ex rel. Douglas v. Brewster, 39 Ohio St. 653.
This being true, I am very clearly of opinion judgment should be rendered in favor of the defendants, on the authority of decisions of this court, some of which are above cited, and others presently to be mentioned, which were supposed to rest on satisfactory gx-ound. The majority of the court place their decision, by which the opposite conclusion is x-eached, mainly upon the ground that section 9 of the act is local and special, applying directly to Columbus alone ; that section 9 attempts to confer upon, the city council corporate power; and that as the legislature would not have passed the act without that section, the whole act must fail, and hence the defendants must be ousted from the performance of the duties so imposed on them. Of course, it can not be doubted that thei-e is nothing in the constitution to prohibit appropriate local legislation, and an act may bo valid, though some of its provisions ax-e general, some local and others special; and iix such case, corporate power may be conferred by the general, but not by the special provisions.
Conceding, for the present, that the act. is local and special to the extent claimed by the majority, I deny' that, after holding the provisions for redistx-icting into wards to be valid, the majority were authoi-ized to institute a search to *127 see whether some unconstitutional provision did not lurk in some section of the act, other than those so directly involved in this suit: and I deny, furthermore, that even if section 9 is wholly unconstitutional, that fact can rightly have any effect on the decision of this case. To show that these positions are impregnable, it will only be necessary to notice three or four cases.
In The State ex rel. Att'y-Gen. v. Cincinnati, 23 Ohio St. 445, these propositions received the approval of the whole court. “ 1. The inquiry in proceedings by information in the nature af quo warranto is limited to the charges in the information, and matter set up by way of plea is only material in so far as it shows warrant in law for the exercise of the authority alleged in the information to be usurped. 2. An information which charges a corporation with usurping certain franchises by acting through other parties, calls in question only the authority of the usurping corporation, and can not be extended so as to include authority not derivable from the corporation, and which such parties exercise in their own right.” And this is expressly approved in The Slate v. Building Association, 29 Ohio St. 92, and virtually approved in two cases, which will now be stated.
In The State v. Covington, supra, this court had under consideration questions as to the validity of the act of 1876 (73 Ohio L. 70), relating to the police in “ cities of the first class having at the last federal eeusus a population of two hundred thousand and over.” The act, of course, could never apply to any other city than Cincinnati, and hence was local and special. This has never been doubted or questioned. By the act it was provided that the governor should appoint a board and that the duty of making appointments of all officers connected with the police of Cincinnati, and the management and control of the police, should be vested in such board. As power was conferred by the same act upon the council of Cincinnati to raise, by taxation, the necessary funds to pay the salaries of the officers of police, it was quite as clear that the act conferred *128 corporate power, and that it was local and special. Nevertheless, this court held, in an elaborate opinion by Mcllvaine, J., in which both article 2, section 26, and article 18, section 1, are referred to, as the act was free from constitutional objection, so far as it provided for the performance of duties by the governor, the police board, and the police, that the defendants, the board of police commissioners, were entitled to judgment, and accordingly judgment was rendered in their faver. When the whole case is considered, it is by no means clear that the court did not intend to sustain the statute as a whole ; but it is pi’obably true, and I am willing to concede that, as explained in subsequent cases (The State v. Baughman, supra; The State v. Constantine, supra), no more was intended than that the act was valid in the particulars involved in the suit, and would therefore be enforced. The case, then, is authority directly to the point, that in a proceeding by quo warranto to oust officers from the performance of duties imposed by statute, in appointing and controlling the police of a city, the court, if it find the authority so conferred to be valid, will not prevent the officers from performing such duties, on the ground that other provisions of the act, imposing upon council the duty of raising by taxation money for the payment of the salaries of such police force, are unconstitutional and void. In other words, the mere fact that an act contains unconstitutional provisions will not defeat it, but effect will- be given to the act as far as it is ■ possible to do so.
So in The State v. Baughman, supra, the same principle is very distinctly re-asserted. By the act of 1880 (77 Ohio L. 350), “ to establish a police force in the city of Xenia,” a board of police commissioners for that city was provided, and in that case the question was whether the powers which, in form, were conferred by that act on the board, were constitutionally and validly conferred. Among other things it was provided in the act, that not more than eight patrolmen should be appointed, “ unless by the concurrence of said council.” Salaries were fixed by the board, but it *129 was provided that the same “ shall be allowed in equal monthly installments by said council, upon the certificate of said board, and paid out of the city treasury as other claims.” Sections 6 and 7 are as follows:
“ Sec. 6. On the first Monday of April, 1880, the office of marshal in said city shall cease and determine, and all duties imposed upon such officer by law or ordinance shall devolve upon, and be performed by said chief of police (provided for in a preceding section of the act) or some member of said force under his direction; provided that the council of said city shall provide a police force from the first Monday in April, 1880, until the force herein contemplated shall be fully organized.
“ Sec. 7. There shall be levied, annually, upon the taxable property of said city, such rate as the council of said city shall determine, not exceeding one mill upon each dollar valuation, for the purpose of paying the salaries of and defraying the expenses incident to said force; and said council shall, on or before the first Monday of June, annually, certify to the county auditor the rate of levy so determined, which shall be placed upon the grand duplicate of said city, and be collected as other taxes, and the fund arising therefrom shall be known as the police fund of said city; provided, that until a revenue shall be derived from the tax herein authorized, the salaries of said force shall be paid out of the general fund of said city.”
As will be seen by the report of the case, the attorney-general proceeded by information in the nature of quo warranto to oust the board from the performance of the duties imposed by the act, which act, as we have seen, was special and assumed to confer corporate power on the city through its council. The case was argued orally and on briefs, though the report contains no abstract of the argument. In the printed brief for relator it is said: “ This special act is unconstitutional (state constitution, article 13, section 1), because it confers corporate power on the city of Xenia — the power, namely, of being organized as a city of the fourth grade of the seond class, with a chief of police in lieu of a *130 marshal for its principal municipal officer (section 2); the power to provide a room, light, fuel, record-books, and. stationery for speciaL police commissioners (section 1) ; the power to pay salaries to a special police force out of the city treasury (section 5), and provisionally out of the city’s general fund (section 7); and the power to levy a police tax, different from that authorized to other cities of its class by the general laws ” (section 7).
In the brief of the defendants it is said : “ The question, then, is whether that act, in so far as it undertakes to create the office of police commissioner for the city of Xenia, and provide the mode of filling the same, is prohibited by the constitution. The inquiry can be no broader. 23 Ohio St. 465. Whether the legislature may confer every power enumerated by the act could not be determined here. The right of the defendant to hold this office only is questioned. . . . Something was said in oral argument about authority given in the act to levy a tax being a grant of corporate power. It is not necessary to divide this question. Strike out of the law the provisions relating to a levy, and the remainder of the act could stand and be a fair police law.”
Johnson, J., in delivering the opinion, referred to the portions of the act above quoted as follows : “ It is claimed that these provisions are the conferring of corporate power by special act, within the inhibition of section 1, article 13, of the constitution. The solution of this question is not involved in the ease at bar. We may concede, for the purposes of this case, that the whole of section 7 is unconstitutional, and yet those provisions creating the board of police commissioners would not be affected.” And so the court, finding the provisions of the act conferring power on the board to be valid, rendered judgment in favor of the defendants.
That, according to The State v. Cincinnati, The State v. Covington, and The State v. Baughman, it was the plain duty of the court in this case to render judgment for the defend *131 ants, I entertain no doubt whatever. True, where a statute is in part constitutional and in part unconstitutional, and it is fairJy to be inferred that the legislature would not have passed the act if it had contained the valid provisions alone, the court may hold the whole act to be invalid (The State v. Sinks, 42 Ohio St. 345, 351); but I am wholly unable to see why the legislature would tnot readily and willingly have passed the act in question if it had contained no other provisions whatever than those providing for redistricting the city into, wards, and the assumption that it would not have done so, is, I believe, clearly unwarranted. Besides, it is not denied that the act contains other valid provisions than those relating to redistrieting. Four sections of the Revised Statutes (§§ 1785, 1998, 2141, 2477) are expressly repealed and re-enacted in a changed form, and section 8 of the act fixes and limits the rate of taxation in cities of the first grade of the second class. There is no intimation in the opinion that some, if not all, of those provisions are valid. In my opinion they are all valid; and it is impossible to state any reason why any city with the requisite population may not, in the mode prescribed by statute, become a city of the first grade of the second class, under the provisions of the act here in question, and other statutory provisions relating to such cities. I repeat, therefore, the cases I have cited are directly in point; it is impossible to distinguish them from this case, even if we assume the act to be merely local; and, hence, the duty of pursuing the same course in this case as in the Covington and Baughman cases, namely, to render judgment m favor of the defendants, was imperative and should have been performed, as I view it, though I am well assured the opinion of the majority was prepared in the full belief that a sound conclusion had been reached in that opinion; and in one thing we all agree, that is, that the question before us is not whether the act is just and wise or the reverse, but whether it is valid.
2. But while the position already taken in this ease is, I think, wholly impregnable, there is another equally strong *132 and of far greater public importance. The claim of the majority, as we have seen, is, that although the sections of the act providing for the redistricting into wards would, if standing alone, be valid, yet as certain other provisions of the act which are special confer corporate power, and as the legislature would not have passed the act without such special provisions, the whole act must fail. But I deny that the act, or any part of it, is in conflict with the section of the constitution (article 13, section 1) which denies to the legislature authority to pass a special act conferring corporate powers. I also deny, as already stated, that if any provision of the act is unconstitutional, it was regarded by the legislature as a matter vital to the passage of the act. And although it is a rule that a statute will not be held to be unconstitutional, unless it is plainly in conflict with the organic law (38 Ohio St. 219), it is unnecessary to invoke that rule, for-in my opinion this act is clearly and plainly constitutional in all its parts.
At the time the act in question was passed, Columbus, the only city of the first grade of the second class, was divided into fourteen wards. In each ward a councilman is elected each year, holding his office two years, so that each ward has two councilmen. Each ward has one member of the board of education, holding his office two years, the even numbered wards electing one year and the odd numbered the next. There is a board of trustees of the water works and a board of police commissioners, one member of each of which boards is elected by the people each year. The duties performed in some other cities by boards of fire commissioners, boards of improvements, park commissioners, and the like, are performed in cities of the first grade of the second class by or under direction of committees of council. The mayor is vested with the powers of a judge of a police court, and the other officers of the city government are filled as provided by statute, some by election and some by appointment.
• The act in question contains provisions, as we have seen, for redistricting cities of the first grade of the second class *133 into wards, and it also contains provisions for the election of one councilman in each ward for two years, except that at the first election those in even numbered wards shall be elected for one year only. It contains provisions for a board of control, to be elected by the council, consisting of three members, upon w’hich board is devolved the powers of the trustees of the water-works, board of improvements, park commissioners, fire commissioners, police commissioners, board of health, and the like. It contains provisions for the election of a board of education, substantially as in the former act. It contains provisions for a police judge, and vests in the police court the powers in criminal cases now exercised by the mayor. It also provides for the election of the other city officers appropriate to such grade. The ground of the decision is that the provisions of the act are special, not ouly with respect to the sections relating to redistricting, but that this objection extends to sections 6, 9, and 18, which assume to coufer corporate power.
Much emphasis is laid on the language of the act (section 6), which requires, in effect, an election to be held on the first Monday of April, 1885, and the council elected at that election, within twenty days after its organization, to appoint a board of control. In the first instance, of course, a board of control is to be chosen by the Columbus council alone, because at present Columbus is the only city of the first grade of the second class; but any city coming into that grade may choose a board of control, in the same manner, under the same act, without any violonce to its provisions; and, indeed, to permit such objection to prevail, is, in effect, to deny the validity of a multitude of acts in the
Ohio laws, from Vol. 77 to Vol. 88, inclusive, on the faith of which bonds have been issued, property purchased, and taxes assessed, among which laws the following may be referred to: 79 Ohio L. 99, 150; 80 Ohio L. 71, 150, 160, 161; 81 Ohio L. 42, 83, 158, 173,190, 185, 192; 82 Ohio L. 11, 43, 68, 77.
The provisions of the constitution denying to the legislature authority to pass any special act .conferring corporate powers, is not one of general, much less universal applica *134 tion, but is strictly limited in its operation. It was only prospective, applying to no laws in force when the constitution was adopted. It has no application to statutes conferring corporate'powers on counties, townships, or school districts, although each of those bodies is a corporation ; 'nor to statutes conferring corporate power upon any person, officer, board, company, or body, not a corporation; nor to any’statute, unless it be special and confer corporate power on either a private corporation, ora city, village, or hamlet which has been incorporated, though where such power is conferred on the council, the council is the alter ego of the corporation ; nor has the provision any relation to statute's providing for the surrender of corporate powers; nor to those which merely shift or change the agency by which an existing power is exercised ; nor to those which are temporary, as to fill an office until a general provision can go into operation; nor to provisions which are curative in their nature, although the original statute was void; nor to statutes for the completion of works of a public character, although the original act for the construction of the improvement may have been invalid ; nor to statutes applying to a class of municipal corporations, where such corporations have been classified under article 13, section 6. Citizen’s Bank v. Wright, 6 Ohio St. 318; State v. Union Tp., 8 Ohio St. 394; Foster v. Commissioners, 9 Ohio St. 540 ; State v. Roosa, 11 Ohio St. 16; State v. Cincinnati, 20 Ohio St. 18, 37, explained 23 Ohio St. 467 ; Walker v. Cincinnati, 21 Ohio St. 14; Pa. & O. Canal Co. v. Portage Co., 27 Ohio St. 14; State v. Covington, supra ; State v. Mitchell, 31 Ohio St. 592 ; State v. Turnpike Co., 37 Ohio St. 481; State v. Powers, Kumler v. Silsbee, 38 Ohio St. 54, 445 ; State ex rel. Douglas v. Brewster, supra; Bronson v. Oberlin, 41 Ohio St. 476; State v. Constantine, 42 Ohio St. 437; Exp. Falk, 42 Ohio St. 638; Thoms v. Greenwood, Superior Court, general term, 7 Am. Law Rec., Appendix; affirmed in Supreme Court December 24, 1878; State ex rel. McCarthy v. Brewster, Supreme Court, October 24, 1884; State v. Brown, Hamilton Co. District Court. 7 Am. Law. Rec. 652; Bead *135 v. Plattsmouth, 107 U. S. 568; Sherman Co. v. Simons, 109 U. S. 735 ; Wheeler v. Philadelphia, 77 Pa. St. 338; Kilgore v. Magee, 85 Pa. St. 401. And see Rev. Stats., title 12, part 1.
If the question were res integra, by no means could it be said to be clear that this court would hold that article 13, section 1, of the constitution, has any application to municipal corporations. But according to a series of cases, the provision does extend to municipal as well as private corporations, and since State v. Mitchell, supra, this court has regarded the construction of the constitution in that particular to be settled. But it was soon found that by reason of such construction of the constitution, there was great difficulty in framing bills for municipal corporations, in view of article 13, section 1, of the constitution; for what might be appropriate, or even necessary for the welfare of one city, might be unnecessary or even mischievous if applied to another. Apparently there were two ways in which the difficulty presented by that section could be obviated. One was to amend the constitution — a very difficult thing in Ohio. The other, which was adopted, was to give to article 13, section 6, such liberal construction as to enable the legislature, under the power of classification, to afford to each of the large cities of the state that which is, in effect, a substitute for a charter, by permitting corporate power to be conferred on any grade or class. And surely it was not intended by article 13, section 1, to abridge the powers which would have existed if that section of the constitution had been omitted, further than the language imperatively requires; and any construction of that instrument, which so limits the section that legislation proper and needful for any city can not be lawfully enacted, without injuring or molesting some other municipal corporation, is not only narrow, but unsound. Accordingly, in 1878, a plan of classification according to population was furnished to, and adopted by, the general assembly (75 Ohio L. 166), and the same was carried into the Revised Statutes (section 1546 et. seq.), and reasons in support of such classification *136 will be found ,in the preface to the revision. This being a general law, it was strictly in compliance with article 13, section 6. Under that classification, Cincinnati becaxne, in 1878, and still continues to be, the only city of the first grade of the first class, Cleveland the only city of the second grade of the first class, Toledo the only city of the third grade of the first class, Columbus the only city of the first grade of the second class, and Dayton the only city of the second grade of the second class; and legislation with respect to the.organization and government of any grade, although it confer corporate power, is genex’al legislation, and not in conflict with any provision of the constitution. True, it will be seen that it is an indispensable part of any valid plan of classification, that any city with the requisite population may pass into a higher grade without additional legislation; but it will also be seen that this can be done under the plan adopted, though only after the lapse of a considerable period from the first steps for such advance (3 Rev. Stats., § 1582; 1 Rev. Stats., §’§ 1583-1588). Thus, while Dayton may now (April 1,1885) have the requisite population-to become a city of the first grade of the second class, it can not do so for more than two year’s, and in the meantime a statute passed now and to take effect immediately applying to a city of the first grade of the second class alone and conferring cox’pox’ate powers on the council of such city, would not be in conflict with article 13, section 1, of the constitution, although when passed, and for more than two yeai’S thei’eafter, it could apply to no other city than Columbus. That this is clearly so will appear fi’om the cases above cited, the points in some of which will be hereinafter stated.
In speaking of the classification so adopted in 1878, and carried into the revision, it is unnecessary to extend the re-max’ks to any other than the first and second classes, though the provisions for classification extend to and embrace all municipal corporations. Title 12, of part 1, of the Revised Statutes, is framed with reference to that classification ; it is not only recognized throughout the whole revision, but *137 numerous subsequent statutes recognize it; and it has been repeatedly sustained by decisions of this court. Among the decisions which expressly sustain such classification, is the above mentioned case of The State of Ohio ex rel. Douglas v. Brewster. That case involved, among other things, the constitutionality of the act of April 16, 1883 (80 Ohio L. 124), which conferred upon the council of cities of the first grade of the first class the power to levy taxes and do other corporate acts, and hence undeniably conferred corporate power, and required the power to be exercised in that year and in subsequent years; and yet Cincinnati was then, and for two years thereafter, at least, would necessarily continue to be, the only city of the first grade of the first class. But this court unanimously sustained the act, although its validity was directly assailed, holding: “The classification of municipal corporations, provided for in the Revised Statutes, sections 1546-1550, referred to in the act of 1883 (80 Ohio L. 124), is authorized by the constitution, and is not in conflict with article 2, section 26, nor article 13, section 6.” And in the opinion it was distinctly stated: “We hold that statutory provisions, with respect to any such class are, for governmental purposes, general legislation, and not in conflict with article 2, section 26, nor article 13, section 6, of the constitution.” 39 Ohio St. 653, 658. If not a rule of, property within Arrowsrnith v. Harmoning, 42 Ohio St. 254, that case should be adhered to, unless the clearest and most cogent reasons can be given for overturning it. But there is no such reason.
That the act now in question is legislation with respect to cities of the first grade of the second class, and therefore general, as clearly as the act of 1883, above-mentioned, is legislation with inspect to cities of the first grade of the first class, and therefore general — that if one of those acts is free from constitutional objection, so also is the other — are propositions which seem to be too clear for argument. And to talk about classification, unless you can confer corporate power on any grade or class, is simply absurd. To what purpose or end do you classify, unless that the legislature *138 may confer on a particular grade or class such power? To be sure, it is objected that it is nowhere stated in The State v. Brewster, that the act was not in conflict with article 13, section 1. But to have so stated would have been a work of supererogation. A decision is as much authority for things virtually and necessarily decided, as for that which is in terms expressed. 'Whether the act was the conferring of corporate power, was not a question which merely lurked in the case. It was at the threshold, and was met and disposed of effectually. Article 2, section 26, requires certain acts to be in force throughout the state (Exp. Falk, supra); but legislation for the government of a grade or class of municipal corporations, however general its character, is not prohibited by that provision. Article 13, section 1, has no relation to any statute which is general, within article 2, section 26, but is in terms confined to acts which are special. The act in question in State ex rel. Douglas v. Brewster was general, in the sense I have explained, and notin conflict with article 2, section 26, and hence not special. Therefore, that act was not prohibited by article 13, section 1. Having decided the act to be general, of what importance would it have been to add that it was not special ? If judgment is rendered against the maker of a promissory note, for the amount thereof, we do not add that the plaintiff may have execution for the amount, for that right follows from the judgment. In State v. Turnpike Co., 37 Ohio St. 481, we have an instance in which a similar course was pursued. There it was argued that the three statutes then uuder consideration violated article 2, section 26, and article 13, section 1, but the court finding the act to be in conformity with article 2; section 26, so declare, without saying any thing about article 13, for the decision, as to the first named section, necessarily determined the question as to the other. I will venture to say that there is not a member of the court who believes the act involved in State ex rel. Douglas v. Brewster is in conflict with article 13, section 1, and, indeed, a majority of them have so expressed themselves.
Again, as showing a distinction between the act in ques *139 tion in the Brewster case and the act involved in this ease, counsel having called attention to the fact that the word Columbus appears in a parenthesis in the title, and hence the act is necessarily special. As Columbus was, at the time the act was passed, the only city of the first grade of the second class, and would continue to be such only city for more than a year — probably for several years — such word in the title seems to me to have been proper, and in a number of similar statutes, already cited, a like course was pursued. But aside from that, the matter is not of sufficient importance, under the circumstances, to have the slightest -weight in determining as to the constitutionality of a statute.
Further objection is made to the act upon the ground that it is not competent for the legislature to make certain sections of the Revised Statutes applicable or inapplicable to a particular class of municipal coi’porations, as is attempted in sections 15 and 22 of the act. Bnt this violates no provision of the constitution, and where that is the case, the legislature is the sole judge as to the forms of legislation. Kumler v. Silsbee, 38 Ohio St. 445.
Recurring to the cases sustaining the view that the act here in question is not in conflict with the provisions of the constitution denying to the legislature power to pass any special act conferring corporate powers, I will notice a few of them. And first with respect to Walker v. Cincinnati, 21 Ohio St. 14. In that case it is not decided in terms (but is it not virtually decided?) that the Cincinnati Southern railway act was not in conflict with that provision of the constitution; but the objection was distinctly made in the printed brief, as was shown in Thoms v. Greenwood, to be presently noticed. Nor is it decided in terms in Walker v. Cincinnati, that that act was not in conflict with article 2, section 26, though that objection was made in argument (p. 29). The opinion shows that article 13 was considered, and it is fair to say that section 1 was not overlooked. The argument was able and elaborate, and the consideration the case received was thorough, and it was expected *140 the decision would end the controversy as to the validity of the act, so that disposition could be made of the bonds. The idea that the court evaded any question is not to be tolerated for a moment, and to my mind it is clear the court did not regard section 1 as an insuperable objection to the validity of the act. But however that may be, it can not be denied that in Thoms v. Greenwood the poiut was distinctly made that that act and those supplementary to it (66 Ohio L. 80; 73 Ohio L. 13; 75 Ohio L. 115; 3 Rev. Stats., §§ 691-702) were invalid because they were special acts conferring corporate power. That case was fully argued in the superior court of Cincinnati, in general term, October, 1878, before Yaple, Force, and Harmon, JJ., and the able opinion of the court, holding that no such conflict between the constitution and those acts existed, was delivered by Yaple, J., and is fully reported in 7 American Law Rec., Appendix, 1-56. The case was carried to this court on error, where it was elaborately ar*gued, orally and on briefs, largely on the question whether the acts were special and conferred corporate powers, and on December 24, 1878, the judgment of the superior court was affirmed. Gilmore, J., and myself were unable to see that the acts, or any part of them, could ever apply to any other city than Cincinnati, or to any other road than the Cincinnati Southern railway, and hence did not coucur in the decision; but, of course, no judge would be willing at this day to disturb it. I invite a comparison between those acts and the act in question here, upon the matter of conferring corporate power by statute claimed to be special.
State ex rel. Douglass v. Brewster, supra, has been sufficiently stated. The sequel to that case was State ex rel. McCarthy v. Brewster, in which this court, on October 24, 1884, awarded a peremptory mandamus requiring the auditor to place on the duplicate the tax levied by the board of education. The case involved the power of the city council of cities of the first grade of the first class to levy taxes, as well as the power of the board of education in that respect, precisely as in the former case, and called for *141 a construction of the act of April 14, 1884 (81 Ohio L. 177, 178), and required the council as well as the board to make such levies in that year; and yet Cincinnati then was, and, without change of the law, would continue to be, for more than two years — probably for many years — the only city of the first grade of the first class, and of this the court would take judicial notice. Let some person interested in the question compare that act with the statute before us here, and point out why it is that one of them is special and confers corporate power, and not the other. To find any distinction between them in this respect is simply impossible.
In Foster v. Commissioners of Wood County, 9 Ohio St. 540, it appeared that the general assembly had passed an act extending to a private corporation power to complete a turnpike. Gholsou, J., said: “The public road in a particular locality, for the construction of which a provision had been made before the adoption of the constitution, remained unfinished and unpaid for. It was a duty resting on the government to dispose of this road. For the purpose of its completion, or the payment of labor expended, a law is passed directing the county commissioners to assess for a limited period of years the property immediately benefited. The amount of money so raised is to be expended under the direction of those having charge of the road. Now in all this we are not able to say, certainly not with that clearness and freedom from doubt which such a case requires, that the legislature exceeded its powers, and violated the constitution. . . . The particular thing authorized in this ease can, in no proper sense, be deemed a corporate power within the meaning of that section of the constitution,”
In State ex rel. Att'y-Gen. v. Cincinnati, 20 Ohio St. 18, it appeared that a statute, purely local, had been passed, extending the corporate limits of that city, so as to include several neighboring villages and other territory, and this court held that act to be a special statute conferring corporate powers, and hence unconstitutional. The case is important, and in order to understand it we must keep in *142 mind the fact that the act subjected a large number of persons, with their property, to a new jurisdiction, and conferred upon council many new and unusual powers. "White,. J., dissented. Explaining his dissent in 23 Ohio St. 467, he said: “The object of the statute in that case was to enlarge and define the territorial limits of the city It seemed to me that such a statute might be regarded simply as an act of local legislation, like adding new territory to a county, or other subdivision of the state, for the purposes of local government. And that while the added territory would thus be subjected to a differut local government, yet it would be a government that was already existing, with adequate powers for the purpose. I was, therefore, inclined to the opinion that the statute in that case ought not to be regarded as an act conferring corporate power.” And it is quite evident from the language of Chief Justice BrinkerhofF, that if the act, as in this case, had conferred no new power, but had simply required other persons, under other official designation, to perform the same duties and exercise the same powers, the act, notwithstanding it was strictly local, would have been held to be valid, for he said : “Does this special act assume to confer upon the corporation of the city of Cincinnati additional corporate powers — powers which, as a municipal corporation, she did not previously possess? The answer is plain. It does assume to confer, on certain prescribed conditions, the power of municipal government, the power of police regulation, the power of judicial jurisdiction, and the powers of assessment and taxation, over a number of outlying suburban incorporated villages, and of other territory hitherto subjected to no jurisdiction except suchas belongs to the township, county, and state organizations.” 20 Ohio St. 37. Suppose our present classification had existed, and that act had conferred the power on cities of the first grade of the first class to take those steps the same year the act was passed. Can any person doubt the act would' have been sustained ?
Further time and space can not be taken to state in de *143 tail the various eases cited. They will be found to fully sustain the positions in support of which they are cited. Attention is called to the whole scheme of title 12, part 1, Revised Statutes, which not only provides for the classification, but in instances too numerous to cite, conferred important corporate powers on cities of a particular grade, to be exercised immediately, when it was impossible that such grade should, during the year, contain more than one city; and the same thing may be said of numerous statutes passed since the revision, many of which authorize cities of a particular grade, as the city of the first grade of the first class, to issue bonds immediately, when it was impossible, without further legislation, that such provision should extend to more than one city for a period of at least two years. Other provisions of the Revised Statutes' provide for filling vacancies and the like, temporarily, in cities of a particular grade. Without referring to the statutes in detail, or attempting to state the points decided in all the authorities cited, a single additional case will be noticed, and then this lengthy opinion will be brought to a close. The majority seems to rely, to some extent, on The State v. Constantine, 42 Ohio St. 437. In that case one judge, unwilling to express an opinion on the poiut decided, wrote an opinion concurring in the judgment on ground not passed upon by the other judges or either of them, as will appear from the report. What the concurring judge said is not the decision of a court, and it binds nobody, not even such judge. Still, of course, I do not object to the remarks. There it appeared the legislature had passed an act, assuming to confer the power to elect police commissioners on “cities having a population of twenty thousand, and not exceeding thirty-five thousand five hundred by the last federal census, and have not been advanced to a city of the second grade, second class.” The law was not a temporary one, but permanent in its nature. The question directly presented was, whether the police commissioners elected at the election so authorized, were officers de jure, < for if' the statute was unconstitutional there could be no *144 officer, either dejure or defacto. In the concurring opinion the ground taken was that the act was local and special and conferred corporate power, and hence there was no valid election and no such office or officer. It would have been impossible to express any other view without coming in.direct conflict with The State v. Mitchell and other cases, for the act could never apply to any other city than Springfield. I am a firm believer in the soundness of that opinion ; but to state the case is to refute the notion that it lends any support to the decisiou in this ease.*
As tending to prevent legislation proper and needful for the municipal corporations of the state; as tending to cast doubt upon numerous statutes, and bonds issued and contracts made on the faith that such statutes were valid; as being not only wholly unsupported by authority, but, as I think, in conflict with several well considered decisions of this court, by force of which the validity of the classification provided for in the Revised Statutes was supposed to be settled; as being calculated — though wholly unintentionally, I am sure — to occasion mischief, I respectfully dissent from the judgment in this case.
Eollett, J., concurs in this dissenting opinion.