Okey, J.
On May 13, 1884, John Falk was convicted, in the police court of Cincinnati, of the offense of being found, on May 9, 1884, in a city of the first grade of the first class— Cincinnati — having in his possession burglar’s tools, and he was sentenced to imprisonment in the work-house for the space of twelve months, to pay a fine of one hundred dollars and costs, and stand committed until fine and costs were paid. The satutory provision under which he was convicted (Rev. Stats. § 1924) is as follows : “Any person found in any such city (of the first grade of the first class) or within- four miles of the corporate limits thereof, having in his possession any burglar’s tools, or implements of any kind commonly used by burglars in breaking or entering houses, shall be deemed guilty of a misdemeanor, and upon conviction thereof before any police court or other court of such city having competent jurisdiction thereof, shall be fined in a sum not less than twenty-five nor more than a hundred dollars, or be imprisoned in the city work-house for a period not less than ninety days *639 nor more than twelve months, or both.” The statute further provides : “ The [police] court shall have jurisdiction of any offense under any ordinance of the city, and of any misdemeanor committed within the limits of the city, or within four miles thereof, to hear and finally determine the same, and impose the prescribed penalty; but cases in which the accused is entitled to a trial by jury, shall be so tried, unless a jury be waived.” Rev. Stats. § 1788.
On October 6, 1884, the district court of Hamilton county on application of Ealk, allowed a writ of habeas corpus, upon which he was brought before that court, but on final hearing, he was remanded to the custody of the superintendent of the work-house. Upon leave lie filed a petition in error in this court, and the only question presented is whether section 1924, above set forth, is or is not in conflict with the constitution, art. 2, § 26, which provides: “ All laws of a general nature shall have a uniform operation thoughout the state.”
The constitution contains, in the article relating to the legislative department, various provisions as to the forms to be observed in the passage of a bill, as to the structure of a bill, the number of members required to pass it, and the effect and operation of the bill when passed. All of these provisions legislators are morally bound to observe, and in some states it is held that the failure to observe any of them will be fatal to the validity of an act. Cooley’s Censt. Lim. 5 ed. 88-98. But in this state it is well settled that the failure of the general assembly to observe some of those provisions will not be attended, in the courts, with the same consequences that will follow the failure to observe other provisions. In other words, the courts of this state hold that some of those provisions are merely directory to the legislature, and an objection that they were not observed will be unavailing in the eojurts ; while other provisions are held to be mandatory, and a failure to observe them will render the statute void. Thus, the provisions as to the number of times a bill shall be read; that no bill shall contain more than one subject, which shall be clearly expressed in its title; and that if a law is amended, the old section or sections shall be expressly repealed, are among those *640 which are held to be merely directory. Miller v. State, 3 Ohio St. 475; Pim. v. Nicholson, 6 Ohio St. 176; Lehman v. McBride, 15 Ohio St. 573; State v. Covington, 29 Ohio St. 102; Oshe v. State, 37 Ohio St. 494; State v. Cappeller, 39 Ohio St. 207. On the other hand, the provisions that the general assembly shall, except in certain specified cases, exercise no appointing power; that the legislature shall not authorize a county to become a stockholder in, raise money for, or loan its credit to a corporation; that money shall not be paid out of the treasury, without the consent of two-thirds of the members of each house, on any claim the subject matter of which shall not have been provided for by pre-existing law ; that all laws of a general nature shall have a uniform operation throughout the state ; that no special act conferring corporate powers shall be passed ; and some other provisions, have been held to be mandatory. Cass v. Dillon, 2 Ohio St. 607-617; Kelley v. State, 6 Ohio St. 269; State v. Kennon, 7 Ohio St. 546; Allbyer v. State, 10 Ohio St. 588; Fordyce v. Godman, 20 Ohio St. 1; State v. Cincinnati, 20 Ohio St. 18; Taylor v. Ross Co., 23 Ohio St. 22; State v. Davis, 23 Ohio St. 434; Exp. Van Hagan, 25 Ohio St. 426-431; State v. Mitchell, 31 Ohio St. 592; State v. Williams, 34 Ohio St. 218; McGill v. State, 34 Ohio St. 228-238; State v. Powers, 38 Ohio St. 54. Hence, the distinction seems to be, that those provisions relating to the structure of a bill, or the forms to be observed in the passage of a bill, are, as a general rule, merely directory; while provisions relating to the number of members required to pass a bill, or the effect and operation of a bill when passed, are usually regarded as mandatory.
The authorities having settled beyond controversy (see opinion of Scott, J., in Kelley v. State, and McIlvaine, J., in State v. Powers), that the constitutional provision requiring all laws of a general nature to have a uniform operation throughout the state is mandatory, and that a failure on the part of the legislature to observe it will be fatal to the validity of a statute, the sole question before us is whether the section quoted (§ 1924), which is confessedly, indeed palpably, local, is or is not of a general nature within the meaning of the con- *641 stifcutional provision. And in this connection it is proper to refer to the origin of the constitutional provision in question. We find that it was suggested by a provision in the constitution of California, which provision, however, liad not been construed when our constitution was adopted : but the California constitution did not contain the words, “ throughout the state they were added to our constitution, on motion, while the provision was under consideration in the convention (2 Debates, 579); and the absence of those words was made the ground of decisions in California which would never have been made if the constitution of that state had contained those words. Looking, however, beyond this, to the evil which led to the adoption of the provision, Thurman, J., in Cass v. Dillon, 2 Ohio St. 607, 617, took occasion to remark: “ .The origin of this section is perfectly well known. The legislature had often made it a crime to do in one county, or even township, what it was perfectly lawful to do elsewhere, and had provided that acts, even for the punishment of offenses, should be in force, or not, in certain localities, as the electors thereof, respectively, might decide. It was to remedy this evil, and prevent its recurrence, that this section was framed.” And Boynton, J., in McGill v. State, 34 Ohio St. 228, 238, used this language: “By reference to the debates upon this clause of the constitution, in the convention that framed that instrument (vol. 2, 225), it will be seen that the legislation complained of, and against which it was sought to guard the future, was of a general character, concerning the general nature of which there could be little doubt. A general law, that land should not be sold upon execution for less than two-thirds of its appraised value, was excluded from operation in several counties by local enactment. There were different laws in different counties respecting the descent and distribution of intestate property. Some statutes defining legal offenses were excluded in their operation from a large part of the state; and different penalties for a violation of the same act were, in some instances, provided for different localities. These are samples of the legislation, to prevent which in the future, and the mischief resulting from it, this provision of the constitution was adopted.”
*642 Finding the constitutional provision to bo mandatory, and that one of the principal evils which led to the adoption of the provision was the existence of local penal provisions general in character, it is proper to inquire as to the nature of the statutory provision in question here. And, first, it is to be observed that the provision is not a mere police regulation for the prevention of crime, but it prescribes punishment for an act, namely, being in possession of burglar’s tools in Cincinnati, or within four miles thereof, and declares it to be a criminal offense, and the provision is quite analogous to the provisions punishing the act of having possession of instruments for counterfeiting, or having possession of counterfeit money with intent to sell it. Secondly, there can be no conviction for the offense of having burglar’s tools in possession, unless it is shown by the state that the prisoner had such possession to aid him or another in the commission, not of any particular contemplated unlawful act, but any unlawful act when it might be thought a favorable opportunity was presented to commit it. Anderson v. State, 7 Ohio, 2 pt. 250; Birney v. State, 8 Ohio, 230; Miller v. State, 3 Ohio St. 475; Miller v. State, 5 Ohio St. 275; Crabtree v. State, 30 Ohio St. 382; Farrell v. State, 32 Ohio St. 456; Stern v. State, 53 Ga. 229; Farrell v. State, 45 Ind. 371; 1 Bishop on Or. §§ 301-310; Bishoja’s Stat. Or. § 1022. And hence, thirdly, the act inhibited by section 1924, is not merely immoral, but plainly vicious; it is one of a very serious and dangerous character; it is not merely malum prohibitum, but malum in se ; and it is a wrong to society, not merely in Cincinnati, not merely in cities, but in every county, in every township, in fact in each and every part of the state; and no reason can be given why it might not properly be made punishable by statute, throughout the whole state, as a criminal offense. Perhaps it is true that such acts may be a greater evil in large cities, possibly a greater evil in Cincinnati, than in any other part of the state. But the same thing may be truthfully said with respect to many, perhaps a majority of criminal offenses. Take the crime of arson. It is a grievous evil everywhere, and under some circumstances *643 a most atrocious crime. It is an evil alike in town and country, but a far greater evil in a large compact city like Cincinnati than in a small village or bamlet or a sparse rural district. But does this reason, or any other with which it may be supplemented, afford any ground, in view of our constitution, for punishing arson under local law ? So, a person having possession of instruments for counterfeiting, or custody of a large quantity of counterfeit money, may be in a better position to carry on a nefarious business successfully, and therefore more likely to occasion harm, in a crowded city than in the rural portions of the state; but a general law upon the subject, applicable to the whole state, has effected all that can be done by legislation to remedy the evil. Other illustrations, equally pertinent, might be given; but it is sufficient to say, that if we must assume, merely because sect,ion 1924 was enacted, that the legislature had information showing that the necessity for such legislation with respect to Cincinnati was urgent, and therefore must be sustained, we would be compelled, on the same principle, to uphold local legislation on any and every subject, however general the nature and subject matter of such legislation might be. "We are not willing, nor are we permitted, to adopt any such rule of construction; and, indeed, to do so would be in effect to unsay what we have deliberately said as to the mandatory character of the constitutional provision we are considering.
To the end that these statements may not mislead, it is proper to say that the general assembly is clothed in the most general terms with legislative power, and this, unrestrained by other- provisions, would authorize the legislature to pass local penal statutes of every sort, and it will be seen that there is no inhibition against the passage of penal statutes which are local and even special in character. Hence, it may be that a statute punishing even with death any person who should break and enter the state treasury in Columbus, Chio, with intent to steal, or having so broken and entered, rob the treasurer of state, would not be subject to any constitutional objection, however objectionable it might be on the ground of propriety. And other and perhaps more apt illustrations of the principle *644 may be readily suggested. On the other band, a statute, general in form, prohibiting the sale of liquors in the immediate vicinity of any college, would perhaps be regarded as a general and therefore valid enactment, in force thoughout the state, although every county does not contain a college. And this is consistent with everything I have stated.
Attention has been called to the fact that in State v. Brewster, 39 Ohio St. 653, 658, it was held that the power to classify municipal corporations expressly authorized by the constitution is addressed in a large degree to the conscience and judgment of the legislature, and “ that statutory provisions with respect to any such class are, for governmental purposes, general legislation” and not in conflict with the constitution. This we held to be a proper construction of art. 13, § 6, which is in no sense in conflict with art. 2, § 26. And in this connection it is proper to say, that in Morgan v. Nolte, 37 Ohio St. 23, we sustained the validity of a conviction under an ordinance of the city of Cincinnati, passed by virtue of Rev. Stats. §§ 1692, 2108, prescribing punishment by fine and imprisonment against any person who, being a known thief, should be found in that city; and, there being no general statute punishing the act of having possession of burglar’s tools, it is true, perhaps, that the substance of section 1924, if adopted in due form as an ordinance of the city of Cincinnati, under authority of sections 1692 and 2108, would be entirely valid. Nor does this militate against any thing I have said; for the constitutional provision we are considering would not, under such circumstances, have any application.
Rev. Stats. § 1924, is, for the reasons stated, in conflict with the const, art. 2, § 26, and therefore void. In saying so, we do not depart in the slightest degree from the rule that no judge should ever concur in holding a statute to be unconstitutional, unless he is satisfied that he is clearly right in so holding. 38 Ohio St. 219. But we do not undertake to lay down any rule, by the application of which it may be determined whether any law is or is not within the inhibition. We content ourselves by holding, that a statute providing punish *645 ment for an act which is malum in se wherever committed, is a law of a general nature, and to be valid under the const, art 2, § 26, must have a uniform operation throughout the state ; nor will the fact that the inhibited act maj be a greater evil in a large city than in other parts of the state, warrant a local statute punishing such offense; and that Rev. Stats. § 1924 is, therefore, unconstitutional.

Judgment reversed and prisoner discharged.