THE STATE OF OHIO, ON RELATION OF THE ATTORNEY-GENERAL, *v.* SAMUEL F. COVINGTON ET AL.

1. Section 26, article 2, of the constitution, which provides that " all laws of a general nature shall have a uniform operation throughout the state," does not inhibit the passage of appropriate local laws.

2. The provisions of a statute which confer upon a board of police commissioners the power to appoint and control the policemen of a city are not in contravention of section 1, article 13, of the constitution, which provides that " the general assembly shall pass no special act conferring corporate powers," although the expenses of the police establishment be paid by city taxation.

3. Section 20, article 1, of the constitution, which declares that " all powers not herein delegated remain with the people," imposes no restriction or limitation on the powers delegated.

4. The general assembly, under section 27, article 2, may direct by law the manner in which any officer, not otherwise provided for by the state or national constitution, shall be elected or appointed: whether such officer shall be elected *or* appointed is left to the discretion of the general assembly.

5. The general assembly, under the general grant of legislative power contained in section 1, article 2, of the constitution, may by law create a board of police commissioners for a city, to be appointed by the governor, and confer upon such board the power to appoint and control the policemen of such city ; and it is no objection to such law that previous to the adoption of the constitution the electors of the cities of the state had uniformly elected or appointed their own policemen, either directly or indirectly.

6. The provisions of section 1 of article 10 of the constitution, which requires that county and township officers shall be elected, do not imply that city and village officers shall also be elected.

7. Section 16, article 2, of the constitution, which provides that "no bill shall contain more than one subject," is directory merely. But a bill for the regulation of the health officers and other police officers of a city, contains but one subject within the meaning of this section.

8. The 18th section of this statute, which provides that certain " officers " shall be abolished, in effect abolishes the offices held by such officers.

9. The provision in the constitution, section 4, article 15, that " no person shall be elected or appointed to any office in this state, unless he possesses the qualifications of an elector," does not, by implication, forbid the legislature to require other reasonable qualifications for office.

QUO WARRANTO.

The information herein filed charges the defendants with unlawfully intruding into, usurping, and exercising the offices of a board of police commissioners and a board of health for the city of Cincinnati; and that they have taken possession of, and are now holding the prisons, station-houses and other real and personal property of the city pertaining to the police and health departments; that they are unlawfully using and expending the funds raised by taxation of the people of Cincinnati for police and sanitary purposes; and prays that they may be made to answer to the State of Ohio, by what warrant they claim to have, hold, and exercise the said offices and privileges.

The defendants, by their plea, admit that they are exercising the offices and privileges mentioned in the information, and for their warrant for so doing, plead the provisions of the act of the General Assembly of the State of Ohio, passed March 24, 1876 (73 Ohio L. 70), entitled, "an act to regulate the police force in cities of the first class, and to repeal an act passed December 18, 1874, entitled, 'an act for the better regulation of the police force of cities of the first class, having a population of two hundred thousand or over,' and to repeal an act entitled 'an act to establish a board of police commissioners in certain cities of the first class,' passed March 29, 1873."

To this plea the relator demurs, and the only question made is as to the constitutionality of the statute set up in the plea; there being no controversy that the terms of the statute would constitute a sufficient warrant for all that is charged against the defendants in the information.

*Peck, Gerard, and Moloney,* for the relator :

I. The law creating the board of police commissioners was unconstitutional. Art. 1, secs. 2 and 20 of the state constitution.

The rights referred to in section 20, as " retained by the people," are evidently those which they were in the habit of exercising at the time of the adoption of the constitution

of such an important nature as to come fairly within the purview of the section.

The people of Cincinnati, from a time prior to the organization of the state government, down to the 24th day of March, 1876, have always held and exercised the power to choose their own police officers.

Nor does section 27, art. 2, give to the legislature power to create the board.

The words of the section are: " The election *and* appointment ,of all officers . . . shall be made in such *manner* as may be directed by law." The power is not to prescribe for election· *or* appointment, as the legislature may desire. It gives no such alternative.

II. The act in question is in conflict with article 10 of the constitution.

Section 1 of that article requires that " the general assembly shall provide by law for the election of such county and township officers as may be necessary."

Section 4 provides that " township officers shall be elected on the first Monday in April, annually, by the qualified electors of their respective townships, and shall hold their offices for one year from the Monday next succeeding their ·election, and until their successors are qualified."

From the earliest history of Ohio, constables have been known and designated as township officers. 1 Chase Stat. 107; Ib. 238; Ib. 344; Ib. 397; Ib. 700; 2 Chase, 1087, 1447; 3 Chase, 1895 ; S. & C. 1565.

Constables then clearly come within the meaning of ·" township officers," as those words are used by the constitution, and must be elected annually by the people of the respective townships. If this be true, then it would hardly be permitted, for the legislature, by merely changing the name of the office, to change the method of choosing the officer. To call a constable by another name, and then provide that the new officer performing the duties of a constable shall be appointed by a designated agency, would be clearly unconstitutional. *Mighels* v. *Hamilton County*, 7 Ohio St. 109.

That policeman is but another name for constable, see 1 Blackstone Com. 355, 356; 1 Chase, 238; 3 Chase, 1759, sec. 25; S. & C. 804, sec. 197.

We claim then that an officer to perform the duties of a constable is required to be elected by the people of the township. *People* v. *Draper*, 15 N. Y. 539; *People* v. *Pickney*, 32 N. Y. 382; *Devoy* v. *The Mayor*, 36 N. Y. 450; *Warner* v. *The People*, 2 Denio, 272.

III. By reference to the title of the act we are considering, it will be seen that only one subject, to-wit, matters relating to the police, is stated; but the law itself contains two subjects, to-wit, matters relating to the police, and matters relating to the board of health.

This is in violation of section 16 of art. 2 of the constitution.

IV. Section 18 of the law under consideration reads as follows: " The officers of the board of health in cities to which this act is applicable, and also all officers created by council or under legislative act, in, for, or under departments placed under control of this board, are hereby abolished."

Just what " abolished," as used in this section, was intended by the legislature to mean, might puzzle almost any one who would consult the dictionary for the technical definition of the word.

The sections of the municipal code relating to the board of health, stating the manner in which officers for the said board shall be elected or appointed, as well as defining the duties of the same, still stand unrepealed and without amendment.

The same may be said of many other sections of the code which this law bears upon, which define the duties, the mode and manner of electing other officers heretofore created by council, or under legislative act, in, for, or under departments placed under control of this board. We think it can not be said that these sections of the code have been repealed by implication; but it seems to have been a deliberate attempt on the part of the legislature to legislate concerning provisions of the code to which the legislative mind

was directed ; and in direct violation of the sixteenth section of article 2 of the constitution, which provides . . that " No law shall be revived or amended unless the new act contain the entire act revived, or the section or sections amended ; and the section or sections so amended shall be repealed."

Even the abolishment of an office can only be accomplished by a repeal of the statute creating it; but here is an attempt to abolish an *officer*, leaving the provisions of the statute as to the office unrepealed.    We believe the authorities are against this form of legislation, where the constitutional provisions are like ours.   See Cooley on Constitutional Limitations, section 151.

To sustain such enactments is to abolish the constitutional provision above referred to.

V. Section 4 of the act in question provides as following:  . . .  " Each member and officer of the police force shall be a citizen of the United States, and a resident citizen, for three years, of the city in which he shall be appointed, *and able to read and write the English language.*"

This clause of the law, we claim, is in direct violation of section 4, article 15, and section 1, article 5, of the constitution, as it adds a disability, or makes a test qualification, which affects a large class of electors, and deprives them of holding the offices under the provisions of this act, and which heretofore has been entirely unknown to the constitution or laws of this state.

*H. C. Whitman,* also for relator :

I. The act establishes a state constabulary in and over the city of Cincinnati and its people, and though they have no voice in the appointment of the force or its management, they are to be taxed for its maintenance.   This is in conflict with sections 2 and 20, article 1, of the constitution.

The constitution, on its adoption, found the people in full possession of all such natural rights as belong to a free people, and among them the right of local self-government, a right they had exercised and enjoyed from time immemo-

rial; and they then exercised the right of selecting their own officers to discharge the duties of police, whether called constables or marshals. This right we confidently claim the people have never delegated to the state. And the act in question is clearly subversive of the spirit of the constitution, and is just as unconstitutional as if it violated the letter of it. 1 Ohio St. 77.

The legislature can have or exercise no powers that are not delegated. *Bingham* v. *Miller*, 17 Ohio, 445; *C. W. & Z. R. R. Co.* v. *Commr's Clinton Co.*, 1 Ohio St. 77; *Lehman* v. *McBride*, 15 Ohio St. 573.

II. The act in question is also in conflict with section 27, article 2, of the constitution. For, if we are correct in what we have said under the first head, then the police commissioners provided for by this act are not such officers as are contemplated by the said section 27.

The municipal local right in police matters is clearly recognized in *Bliss* v. *Kraus*, 16 Ohio St. 59; 15 N. Y. 557; *People* v. *Hurlburt*, 24 Mich. 95.

III. A police officer is not a state officer; his duties are all local, and prescribed as such. He is purely a local officer. 15 N. Y. 571. He can only arrest for criminal offenses inside the city limits.

But if a state officer, then he should be paid by the state. And if a state officer, then the act in question is unconstitutional, because in such view it is a law of a general nature, and must have, under section 26 of article 2, a uniform operation throughout the state. But it is limited to Cincinnati, and can not have this uniform operation, and is, therefore, void.

IV. By section 2 of the act, the power and authority of the commissioners, their rights and duties as to the police, it is expressly provided shall be the same as are now by law vested in the mayor; and by section 19 of the act, the law vesting these powers in the mayor is repealed. So that at the time this act went into force there was no law to refer to as containing the powers attempted to be bestowed on the commissioners.

And, still further, the act in its 2d and 19th sections violates clearly section 10 of article 2 of the constitution, which requires that the act or section or sections which vested police powers in the mayor, relied on in the 2d section, must be set out and recited in the new act. *Lehman v. McBride,* 15 Ohio St. 573; 70 Ohio L., 61.

*Hoadly, Johnson & Colston,* for defendants in error: .

I. The act of March 24, 1876 (73 Ohio L. 70), is not in contravention of the constitution, by reason of its applying only to cities of the first class, having a population, at the last federal census, of two hundred thousand and over. *Welker* v. *Potter,* 18 Ohio St. 85.

II. Nor is it unconstitutional by reason of its committing to the governor the power of appointing police and health commissioners for such cities. The preservation of the peace and health of that portion of the people who reside within or near, or may visit, cities or villages, is a state, not a municipal service, and may be rightfully discharged through any agencies the state may select.

If there be anything connected with municipal corporations, control over which is denied to the legislature, it is not the offices they perform for the community at large, as in matters of police and health, but their private rights of property and trusts. Dillon on Municipal Corporations, secs. 30, 33, 34, 35, 39, and cases cited; Cooley on Constitutional Limitations, *170, 238, and cases cited; *Western Homœopathic College* v. *Cleveland,* 12 Ohio St. 377; *United States* v. *Baltimore and Ohio Railroad Co.,* 17 Wall. 322; *People* v. *Draper,* 15 N. Y. 532; *Metropolitan Board of Health* v. *Heister,* 37 N. Y. 661; *Fowle* v. *Common Council of Alexandria,* 3 Pet. 378; *Mayor, etc., of Baltimore* v. *State,* 15 Md. 376; *Altvater* v. *Baltimore,* 31 Md. 462; *City of Richmond* v. *Long's Adm'r,* 17 Grat. 375; *Police Comm'rs* v. *Louisville,* 3 Bush. 597; *Diamond* v. *Cain,* 21 La. Ann. 319; *People* v. *Mahaney,* 13 Mich. 481, 499; *People* v. *Hurlbut,* 24 Mich. 44, 79; *People* v. *Common Council of Detroit,* 28 Mich. 228, 235, 236; *State* v. *Mayor, etc., of Savannah,*

Charlton, 250; *State* v. *Dews*, Charlton, 397; *State* v. *County Court of St. Louis Co.*, 34 Mo. 546.

III. Nor is it unconstitutional, by reason of its transfer to the police commissioners of the control of the station-houses, jails, etc. These are not the private property of Cincinnati, but were procured and are held for governmental and state purposes, in aid of the police power. *Mayor, etc., of Baltimore* v. *State*, 15 Md. 376; *Police Comm'rs* v. *Louisville*, 3 Bush. 597.

IV. Nor is it unconstitutional by reason of its provisions relative to funds and taxes. *Police Comm'rs* v. *Louisville,* 3 Bush. 606; *State* v. *County Court of St. Louis Co.*, 34 Mo. 546; *Mayor, etc., of Baltimore* v.. *State*, 15 Md. 376.

V. Nor is it unconstitutional by reason of its provisions as to the qualifications of the policemen. These were in the laws for which this is a substitute, and are in accordance with the constitution. They are not qualifications for *office*, but reasonable rules requiring fitness for employment. Even if this were otherwise, it would not justify this *quo warranto*, but the police commissioners would have the right to disregard them. These provisions only attempt to limit the discretion of the commissioners, and the remedy is for the commissioners to disregard them. *Quo warranto* does not lie to compel public officers to disobey even an unconstitutional imposition. By appointing officers qualified, as prescribed by the act, the police commissioners do not usurp any franchise at all. The regard paid by them to these qualifications is the exercise of their lawful discretion.

VI. Even if one or more infractions of the constitution should be "discovered in the act, which we think will not be found in this law, it would not justify the ouster of the police commissioner from office, but from the exercise of the impeached franchises only. *People* v. *Mahaney*, 13 Mich. 499; Cooley on Constitutional Limitations, *177, and cases cited.

VII. Even if the act contained more than one subject, it could not be attacked as an infraction of article 2, section 16 of the constitution, because the provisions of that sec-

.110      SUPREME COURT OF OHIO.

Ohio ex rel. Atty.-Gen. *v.* Covington et al.

tion are merely directory. *Miller* v. *State*, 3 Ohio St. 475 ; *Pim* v. *Nicholson*, 6 Ohio St. 176 ; *Lehman* v. *McBride*, 15 ·Ohio St. 573, 602.

But the act in question does not contain more than one subject, viz., the exercise of the police power of the state within the city of Cincinnati. Laws regulating the abatement of nuisances, the preservation of the public health, .and checking the spread of contagious or infectious diseases, are within the proper scope of the police power. Dillon on Municipal Corporations, sec. 93, and cases cited ; *Ohio & Miss. R. R. Co.* v. *McClelland*, 25 Ill. 140.

VIII. The eighteenth section of the act in question abolishes certain offices, as the legislature might properly do. The objection to this section is a mere play upon letters. The section has no sense, unless the word " officers " is read·· " offices." To abolish officers is to abolish offices, and can mean nothing else.

IX. The act of March 29, 1859 (1 S. & C. 766), as amended March 28, 1861 (S. & S. 412), and March 7, 1872 (69 Ohio L. 23), is not repealed or in any way affected by the act in question. The constables of Cincinnati will continue to be elected by the people, notwithstanding this act.

McILVAINE, J. The statute under which the defendants claim to hold and exercise the offices and privileges named in the information provides " that in all cities of the first class, having at the last federal census a population of two hundred thousand and over, the police powers and duties shall be vested in and exercised by a board of five members, to be appointed by the governor for a term of five years," etc.

The terms employed in this statute to describe the class of cities provided for were intended, probably, to make the statute conform to the requirement of section 26, article 2, of the constitution, which provides : " All laws of a general nature shall have a uniform operation throughout the ·state;" and perhaps also to save it from question under

section 1, article 13, which provides : " The general assembly shall pass no special act conferring corporate powers."

If such was the purpose, it is well to say here that such ends can not be accomplished by such means. This enactment is essentially local and special in its nature. We do not deny that the legislature may classify the subjects of legislation—to wit, cities and villages—and that a statute in relation to a class would be treated as a general law, within the meaning of these provisions of the constitution ; but there is no classification accomplished by this statute. Cincinnati was, is, and ever will be, the only city in this state that had a population of two hundred thousand and over at the federal census of 1870. Cincinnati, therefore, is the only city to which this statute can ever apply, and it might as well have been named in the act.

But regarding the act as local and special in its nature, how is it affected by these constitutional provisions ? This question is not raised by counsel, but we think it stands in the way.

Section 26 of article 2 does not forbid local legislation. Its requirement is, that laws of a general nature shall have a uniform operation throughout the state. It does not require that all enactments of the legislature shall be of a general nature. On this point I will only add, that the power of the general assembly to pass local and special laws is embraced in the general grant of legislative power; subject, of course, to such inhibitions and limitations as are found elsewhere in the constitution. But section 26, article 2, was not intended as a limitation on the power. It was upon this view of the constitution that a statute similar to this was held to be constitutional in *Welker* v. *Potter*, 18 Ohio St. 85, notwithstanding the language, at the close of the opinion, would seem to indicate otherwise.

As to the first section of the thirteenth article, it is enough here to say that the board, which the defendants constitute, is not a corporation, nor are its powers, under the statute, within the meaning of this section. See *Walker* v. *Cincinnati*, 21 Ohio St. 14.

The principal objections urged by counsel for relator against the validity of this statute are based on the first clause of section 2, article 1, of the constitution, which declares : "All political power is inherent in the people," and the 20th section of the article, which is as follows : " This enumeration of rights shall not be construed to impair or deny others retained by the people ; and all powers not herein delegated remain with the people." The first of these declarations enunciates the foundation principle of our government, to wit, that the people is the source of all political power ; but it was not intended as a denial of the power or right of delegation and representation. If this were not otherwise palpable, it would be made so by the second declaration above named, to wit : " And all powers not herein *delegated* remain with the people."

This last clause means exactly what its words import; but even from them a plain implication arises that all the powers in and by the constitution delegated do not remain with the people, but are vested in the agents and officers of the government, to be exercised by them alone.

Among the powers delegated by the constitution is the following, article 2, section 1 : " The legislative power of the state shall be vested in the general assembly."

Now, whatever limitations upon the power thus delegated to the general assembly may be found in other provisions of the constitution, it is quite clear that section 20 of the 1st article does not impose any limitation upon it whatever. That section only declares that powers not delegated remain with the people. It does not purport to limit or modify delegated powers.

It can not be doubted that the terms of the constitution, whereby the legislative power of the state is vested in the general assembly, are comprehensive enough to authorize the enactment in question. Rules and regulations for local municipal government of cities and villages are subjects of and are as clearly within the scope of legislation as are those which concern the state at large. Cities and villages are agencies of the state government. Their organization

and government are under the control of the state, and every law which affects them must emanate from the general assembly, where the legislative power of the state is vested.

Now, it is true that the terms in which this grant of power is made to the general assembly are restrained and limited by many inhibitory provisions contained in the instrument; but we find no express inhibition against such legislation as is contained in this statute. The question, therefore, is, is there an implied inhibition against it?

It is claimed by counsel for the relator, as we understand their arguments, that such inhibition is implied from the provisions quoted above from the bill of rights, especially when they are considered in connection with the history and practice of the state, at and previous to the adoption of the constitution.

The circumstances referred to by counsel, it is claimed, would show that, previous to the adoption of the present constitution in 1851, the police of the several cities and villages within the state had been elected by the electors resident therein, or appointed by boards or officers elected by the electors.

And, therefore, it is to be inferred from the above declaration in the bill of rights, to wit, " and all powers not herein delegated remain with the people," that the power to change the mode of election or appointment of the police force of cities and villages was intended to be withheld from the general assembly.

To this argument a majority of the court desire to express their unqualified dissent. By such interpretation of the constitution, the body of laws in force at the time of its adoption would have become as permanent and unchangeable as the constitution itself. For such argument would apply with equal force to every subject of legislation concerning which no special direction is contained in the constitution. Indeed, the true rule for ascertaining the powers of the legislature is to assume its power under the

general grant ample for any enactment within the scope of legislation, unless restrained by the terms or the reason of some express inhibition.

It is also claimed, on behalf of the relator, that the act in question is in conflict with the spirit of article 10 of the constitution, the first section of which provides : " The general assembly shall provide by law for the *election* of such county and township officers as may be necessary."

The argument based on this provision, as we understand it, may be stated thus : At the time of the adoption of the constitution, as ever since, certain of the county and township officers were conservators of the peace, and composed a part of the state constabulary. And as all county and township officers must be elected, therefore the intention may be inferred that all conservators of the peace and the constabulary of the state must be elected.

It is true that some of the duties of sheriffs elected by counties, and of constables elected by townships, are similar to those of city and village policemen ; but it is not true that city or village policemen are officers of a county or township ; nor is it true that the duties of sheriffs and constables are prescribed by the constitution, or that the duties imposed on policemen by law are owing only to residents of the locality to which they belong. Many duties of policemen relate to matters of general concern, and have always been regulated by the general laws of the state.

Indeed the only legitimate argument to be drawn from this provision of the constitution militates against the conclusion of counsel. The framers of the constitution having provided for the *election* of county and township officers, without having made any such provision in relation to city or village officers, raises an inference that the intention was to leave the manner of electing or appointing the latter to the wisdom and discretion of the legislature. But there is no necessity for such inference, as it is expressly provided in section 27 of article 2 as follows : " The election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution, or the con-

.stitution of the United States, shall be made in such manner as may be directed by law; but no appointing power shall be exercised by the general assembly, except as prescribed in this constitution and in the election of United States senators."

We also differ with relator's counsel in their construction of this section, to wit, that the power being in the conjunctive, and not the disjunctive, the legislature may not prescribe for the election or appointment of such officers, but must make certain of such officers elective and others appointive, without power of change. By the literal reading, the same officer should be both elected and appointed; but the legal meaning is, that each officer, when it is not otherwise provided, shall be elected or appointed in such manner as may be directed by law; and the law so directing the election or appointment may be changed at the will of the law-making power.

The defendants, as members of the board of police commissioners for the city of Cincinnati, as well as the policemen by them appointed, are officers for whose election and appointment no provision is made in the constitution of the state or of the United States, and therefore clearly come within the provisions of section 27 of article 2 of the constitution.

Counsel for relator further claim that "the constitution is a limitation upon the power of the legislative department, but is to be regarded as a *grant* of power to the other departments of the government. Neither the executive nor the judiciary, therefore, can exercise any authority or power, except such as is clearly granted by the constitution."

The objection here sought to be made is, that the general assembly could not confer the power of appointing the board of commissioners upon the governor. There is no such discrimination in the constitution as above stated. Power was given to the general assembly to create the board of police commissioners, and to prescribe the manner in which it should be filled, either by election or appoint-

ment. Appointment by the governor was prescribed. In this the constitution was not violated. The principle which determines this point was announced in *The State ex rel.* v. *The Judges*, 21 Ohio St. 1 ; also in *Walker* v. *Cincinnati*, Ib. 14, where the power of appointing certain officers was conferred on certain judges.

It is also contended that the act in question is in violation of section 16 of article 2, which provides that " no bill shall contain more than one subject, which shall be clearly expressed in its title," etc. The title of this act reads as follows : "An act to regulate the police force in cities of the first class, and to repeal," etc. The objection made is this, that this act embraces two subjects, namely : 1. The police of the city, which before the passage of the act had been under the control of a board of police commissioners. 2. The health of the city, which had been under the supervision of a board of health. We think there is but one subject embraced in this act. The preservation of the public health is a duty clearly within the scope of police regulations. The mere fact that the police powers of the state may have been exercised by different boards or agencies within a particular district, does not divide them into different subjects of legislation within the meaning of this provision of the constitution ; for instance, a statute which places the police force of a district, when in the discharge of distinct police duties, under the control of distinct boards, would not contain more than one subject of legislation. By the act in question, the entire police force of the city of Cincinnati, in the discharge of all police duties, is placed under the control of a single board. It contains but one subject.

If, however, it were otherwise, we would follow the decisions of this court heretofore made, and hold that the provision of the constitution above cited is directory, and not mandatory. See *Miller* v. *State*, 3 Ohio St. 475 ; *Pim* v. *Nicholson*, 6 Ohio St. 176. *Lehman* v. *McBride*, 15 Ohio St. 573, 602.

In holding this provision to be directory, we do not mean,

however, to be understood as saying that it is without ob-
ligatory force. On the contrary, it is a direction to the
general assembly, which each member, under the solemn
obligation of his official oath, is bound to observe and
obey. To the legislator it is of equal obligation, with a
mandatory provision. The difference between a mandatory
and directory provision is this, and nothing more : the
former avoids, the latter does not. This is a rule of de-
cision, and is based on grounds of expediency. The rule
is amply recognized by all courts of law, and the reason of
the rule is this, that less injury results to the general pub-
lic by disregarding than by enforcing the letter of the law.

The criticism to which the 18th section of the act is
subjected by counsel does not affect the defendants in this
action. The section reads : " The officers of the board of
health in cities to which this act is applicable, and also all
officers created by council or under legislative act, in, for,
or under departments placed under control of this board,
are hereby abolished." The effect of this section was to
abolish the offices held by the " officers " referred to.

The last objection made to the validity of this act is based
on sec. 4 of art. 15 of the constitution, which declares : " No
person shall be elected or appointed to any office in this
state, unless he possesses the qualifications of an elector."

The question arises under the 4th section of the act,
which provides :  .  .  .  " Each member and officer of
the police force shall be a citizen of the United States, and
a resident citizen, for three years, of the city in which he
shall be appointed, and able to read and write the English
language."

There is no claim made that the qualifications prescribed
in the act, in view of the nature of the duties to be per-
formed, are unreasonable, or even unnecessary to the dis-
charge of the duties. The point made is, that disqualifica-
tions are imposed by the statute which are not imposed by
the constitution.

It is apparent that this statute is not in conflict with the
terms of this constitutional provision. It does not autho-

rize the appointment of a person who is not an elector. The express provision of the constitution is, that a person not an elector shall not be elected or appointed to any office in this state. Now, unless the clear implication is that every person who has the qualifications of an elector shall be eligible to any office in this state, there is no conflict between the statute and the constitution. I do not believe that such implication arises. There are many offices, the duties of which absolutely require the ability of reading and writing the English language. There are many electors who, from habit of life and otherwise, are wholly unfit to discharge the duties of many offices within this state. If the framers of the constitution had intended to take away from the legislature the power to name disqualifications for office, other than the one named in the constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration. The power under the general grant being ample and certain, a statute should not be declared void because in conflict with an alleged implication, unless such implication be clear and indubitable.

In the consideration of this case, I may add, we have confined ourselves, as was our duty to do, solely to the question of legislative power, without any thought or inquiry as to the wisdom of the act, or the motives which induced it. And, being unable to find a conflict between the statute and either the letter or the reason of the limitations upon legislative power contained in the constitution, it is our duty to affirm the validity of the statute. And, having come to this conclusion in the exercise of our own judgment, we are gratified in believing that the decisions in other states on germain questions are in harmony with us.

*The People ex rel. v. Draper*, 15 N. Y. 532, is a leading case. The question was as to the constitutionality of a statute of New York, passed in 1857. The statute was passed under the constitution of 1846, which provided: "All county officers, whose election or appointment is not

provided for by this constitution, shall be elected by the electors of the respective counties, or appointed by the boards of supervisors or other county authorities, as the legislature may direct. All city, town, and village officers, whose election or appointment is not provided for in this constitution, shall be elected by the electors of such cities, towns, or villages, or some division thereof, or appointed by such authorities thereof as the legislature may designate for that purpose."

It was also provided by the constitution, " That all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

Under this constitution, and previous to the year 1857, the cities of New York and Brooklyn, respectively, were entitled to elect or appoint, by such local authorities as the legislature might designate, their local officers and policemen.

By the statute of 1857, the counties of New York, Kings, Westchester, and Richmond (including the cities of New York and Brooklyn as well as other territory) were united into a district called the Metropolitan Police District of the State of New York. For this district the governor, by and with the advice and consent of the senate, was required to appoint five commissioners of police. These commissioners, as a board, were invested with the appointment and control of all policemen within the district; and the power of the inhabitants of New York and Brooklyn to elect, or by their local authorities to appoint, any part of the police force of either city was taken away. This statute the court of appeals held to be constitutional, and that it was no objection that it divested the local constituencies of the franchise of electing their police officers. It is true, two of the eight judges comprising the court dissented from the judgment of the court; but the chief ground of their dissent is not an element in the case before us, to wit, a constitutional provision securing to the inhabitants of cities and villages a voice in the selection of their local police.

Some suggestions have been made in argument which are not mentioned in this opinion, but, on the whole case, a majority of the court are of opinion that the demurrer of the relator to the plea of defendants should be overruled.

*Demurrer overruled.*

REX, J., dissented.