Follett, J.
Relator avers that on April 3, 1886, the police commissioners of the city of Cincinnati were removed from office by the governor of Ohio; and that on February 6, 1886, -the mayor of Cincinnati removed from office Edwin Hudson, the superintendent of police, but that Hudson refused to surrender the office, and relatof prays for judgment of ouster.
*139 If relator does not aver facts that show a cause of action against Hudson, the demurrer of Hudson should be sustained.
Relator insists that the act of April 3, 1885 (82 Ohio L. 101), under which Hudson was appointed, is not constitutional, as it is inhibited by section 26, article 2, of the constitution, which pi’ovides that, “All laws, of a general nature, shall have a uniform operation throughout the state.”
This question vitally affects Cincinnati, as well as Cleveland, Toledo, Columbus and Dayton ; for, at present, under our system of classification of cities, there is but one of these cities in a general class. This act (§ 1870) applies to “ cities of the first grade of the first class” — to all such cities in Ohio — though Cincinnati is now the only city in that class. Each city just named is now similarly situated. Each of the large cities seems to need peculiar legislation, which can be provided only by such general classification. The peace and prosperity of these cities, and the best interests of the state, require that this system of classification be regarded as stare decisis and settled. See Rev. Stat., § 1546. Under the power to organize cities and villages (Const., Art. 13, §6), the general assembly is authorized to classify municipal corporations, and an act relating to any such class may be one of a general nature. See State v. Covington, 29 Ohio St. 102; State v. Mitchell, 31 Ohio St. 592; The State v. Brewster, 39 Ohio St. 653, 658.
Recently this court, without a dissent, reaffirmed this principle in the case of Alice D. Scheer v. The City of Cincinnati, on error to the superior court of Cincinnati (15 Week. L. Bull. 66), which case was not reported. In that case the court held to be constitutional the act of April 25, 1885, (82 Ohio St. 156, § 2293a), providing for improving the streets of Cincinnati.
By the same principles and holdings, the act in question here, by the provisions of which Hudson was appointed to his office and now holds and exercises the same, is also cons *140 titutional, as not inhibited by section 26 of article 2, or section 1 of article 13, of the constitution.
This i’eally disposes of the whole case. "We are not told why, or by what law, the mayor assumed to act. There is no statute expressly enabling the mayor to remove Hudson. This act provides, by section 1870, “ All police powers and duties connected with and incident to the appointment, regulation and government of a police force . . . shall be vested in a board of three members, . . . and they shall be called the board of police commissioners.” Section 1876. “The board is hereby invested with, and shall, when necessary, exercise all the powers which are conferred by law upon mayors of cities and sheriffs of counties, in respect to requiring the services of the military, in aid of the civil authorities, to quell riots, suppress insurrection, protect property, and preserve public tranquillity; and such investiture of power shall exclude, within the city, the exercise of similar powers by the mayor of such city, or sheriff of the county in which the city is situated.”
Section 1879 provides what shall compose the police force of the city, and makes the superintendent of police the chief officer of the police force.
Section 1878. “ It shall be the duty of the board and of the force hereby constituted, at all times of the day and night, within the boundaries of the city, to preserve the public peace, prevent crime, arrest offenders, protect rights of persons and property, guard the public health, preserve order, remove nuisances existing in public streets, roads, places, and highways, . . . protect strangers, and travelers at steamboat and ship landings and railway stations, and generally to obey and enforce all ordinances of the city council, criminal laws of the state and of the United States.”
These provisions show the necessity of having a superin~ tendent of police, and they also show that the mayor of the city has no control of the police force or of the superintendent of police. Much less has the mayor the power to re *141 move from office the superintendent of police. No adequate reason has been given for the attempted removal.
It is not sufficient to state that as the governor had removed the board of police the mayor claimed the control of the police force and sought to compel obedience by rémc/ing from office the superintendent of police. Such power is conferred only by statute, and there is no such statute. This attempt, by the mayor, to take control of the police force of Cincinnati, is without legal support. To show there is no ground of claim for the power so to remove Hudson, at the suggestion of my brethren, I add the following analysis of the statutes.
If it be said the mayor derives the right from the fact that section 1744 makes him a conservator of the peace throughout the corporation, the same is true of every justice of the peace (§ 610). We are referred to section 1874, as amended February 27,1880 (77 Ohio L. 23), which provides, “ The mayor shall have power to make and publish, from time to time, orders, rules and regulations, for the government, discipline and duties of the police force.” It is true this section is not directly repealed.by the act of April 3,1885 (82 Ohio L. 101,111), but it will be observed that it constitutes a section of the first subdivision of the fifth chapter of the fifth division of the twelfth title, part first, of the Revised Statutes, and section 1875, as amended April 3, 1885 (82 Ohio L. 102), provides that the board of police commissioners “ shall have the other powers and other duties specified in this subdivision.” This would repeal section 1874 by the strongest possible implication, even if section 1874 had the power claimed for it. But, upon reference to the act of 1880, it will be found that section 1874 did not give the mayor power to appoint or remove policemen. That power was given by other sections, namely, sections 1875,1879 and 1881, all of which were repealed by the act of 1885. Section 1874, having no reference therefore to the power to appoint or remove a superintendent of police, the attempt of the mayor to supersede Hudson is necessarily ineffectual. Section 1874 can not have *142 any greater force or effect now than was ascribable to it before the repeal of sections 1875, 1879 and 1881. State v. Thompson, 34 Ohio St. 368.
Besides, section 1874, if still in legal existence, does not profess to confer a power of appointment or removal. Its effect is expressly limited to the making and publishing of rules: — rules for government, discipline and duties of the force when established, not for creating or changing its membership.
Section 1711 can not help the mayor. It gives no power of removal: — and the petition does not show an appointment by the mayor, in pluce of Hudson, “ with the advice and consent of the council.” Besides, section 1711 does not apply, because the method of appointing a superintendent of police is “ otherwise provided in this title,” viz., by section 1875.
For the same reasons, section 1713 does not apply, although it might authorize “the mayor, with the advice and consent of the council,” to fill a vacancy in the office of police commissioner, but for the explicit provisions of section 1870.
The attempted removal is a nullity. The petition does not state a cause of action, and the demurrer thereto is sustained.

Writ refused.