Spear, J.
The single ground for ouster is that the act constituting this special district is void in that it contravenes sec. 26 of article 2, of the constitution, which is : “ All laws of a general nature shall have a uniform operation throughout the state.”
If this objection is made clearly to appear, then it is the •duty of the court to so pronounce, and to grant the prayer of the petition. But if any doubt exists, it is the • duty of the court to uphold the act.
• The precise question is: Is this act one of a general nature; or is it, on the other hand, a local enactment? That it is competent for the general assembly lo pass local and special laws, is not questioned, nor is it believed that that body may not pass local laws in regard to subjects upon which it has already passed a general lawi As to certain subjects, other clauses of the constitution prohibit the passage of special acts, but the subject of schools is not one. Nor does it follow that a law which is local and special in the object to be accomplished, and in the form it has been made to assume, must be declared a general statute merely because the same result *277 might have been reached by means of a general law. And, although a law be upon a general subject, it is not necessarily, a law of a general nature. The subject may be general while the purpose of the act may be special and local.
Of this character was the act brought in review in The State v. The Judges, 21 Ohio St. 1. The purpose of the act was to limit the compensation of the county treasurer, auditor, recorder, sheriff, probate judge and clerk of the county of Hamilton, and to have fixed by the judges of the court of common pleas of that county, the compensation of all deputies, clerks, etc., employed by those officers. The matter of fees to be paid county officers had been, long before, made the subject of a general statute which fixed fees for those officers throughout the state, and the subject was clearly a general one, yet this court held that the act in question was not a law of a general nature, but was intended to provide for a condition of things in its nature local to that county.
Of like character was an act passed March 24, 1876, the purpose of which was to regulate the police force in the city of Cincinnati, through a board of police commissioners, to be appointed by the governor. The constitutionality of the act was considered in Ohio v. Covington, 29 Ohio St. 102. This court held the act to be local and special in its nature, and therefore not in conflict with section 26 of article 2, of the constitution, although all the matters embraced were subjects of legislation by general law.
In McGill v. The State, 34 Ohio St. 228, this court reviewed the act of May 7, 1877, prescribing the manner of selecting juries in Cuyahoga county. It was not doubted that the matter of the selection of juries was a general subject in which the people of the state at large were interested, and that, since the organization of the state, it had been provided for by general laws; so that the law which provided a special mode of selecting juries in that county, was one treating of a general subject already embraced in general laws, making provisions applicable to all counties of the state, yet this court held that the act was not a law of a general nature, requiring uniformity of operation throughout the state, but ■ that it was designed *278 to meet a special want in a particular county, and was not in conflict with the constitution.
It follows that if the act in question in this case can, consistent with the subject-matter and the provisions of the act itself, reasonably be regarded as one local in its nature, rather than general, the court’s duty to maintain it is clear. Nay, unless it clearly appears that it is general in its nature, and not local, it must be sustained. The form of the act, and the manner of its publication, show that it was intended as a special, local law, and we are to conclude that, in the judgment of the general assembly, there was sufficient reason, in the condition of things existing within the territory affected, to warrant provisions by special law. This special district is composed of territory of Osnaburg township, the territory of which, as we gather from the record, theretofore comprised one township district. The change contemplated by this enactment, was to create in that township a special district, the schools in which were to be controlled by a board of education, as schools in other special districts are.
In the general laws upon the subject of schools we find that section 3890 of the Revised Statutes, which in terms provides for township districts, also recognizes that a portion of a township may be a special district, and provision is made elsewhere in the statute for constituting such special districts. Sub-districts and joint sub-districts, are also provided for, and provision for consolidation of these districts is made. The idea pervading the'statute, as to this feature is, that the needs of the people of the different townships will be different ; that, while in one the education of the youth may be reasonably attained by constituting the whole territory into one district, in an adjoining township the same object can be better attained by dividing the territory into sub-districts, or by carving out of the territory of the township a portion into a special district, or, by reason of changed conditions, by the consolidation of sub-districts. This implies that the question of whether territory in a given locality shall be formed into one kind of a district, or another, will be determined by considerations of local convenience, and that no division by a *279 rule which shall be fixed, arbitrary, and uniform, will meet the requirements of all sections. It is foreseen that changes will be necessary from time to time, and power is given to •boards of education to initiate such changes, and the same may •be brought about in any of the several localities without reference to or disturbance of, neighboring districts not geographically affected, or the schools within them. Clearly, then, in the judgment of the framers of the general law, divisions of territory into districts, is a matter of local concern, •and this policy has obtainad from a time long anterior to the .adoption of the present constitution. And that it has been the policy since is evidenced not only by the terms of the general law, but by the passage of more than one hundred and forty special acts creating and changing the boundaries of school districts.
The case of The State v. Powers, 38 Ohio St. 54, is cited as an authority controlling this case, and, if followed, it is prob.able that the relator’s contention must be sustained. It may not be out of place, however, to note a distinction between the enactment under review in that case, and the one we are •considering. The defendants, Powers and others, assumed to •act as a board of education of a special school district comprising an entire township, and created by consolidation of a village district within the township, with the remainder of the territory, which theretofore had comprised a township district; and the board was to be chosen, two from the territory comprising the village district, two from that comprising the township district, and two from the township at large. In •the opinion, special emphasis is laid upon the fact that under the general law there is no authority for extending the government of village ■ districts over the sub-districts of townships, or for consolidating village and township districts, in the manner provided in the special act, nor authority for organizing a board of education as therein provided. Without stopping to discuss the importance of this objection, attention is called to the fact that the act under review is open to no like objections, as it undertakes simply to do directly, by special act, what by the general statute, may be done in an *280 other way, viz.: create a special school district within the territory of a township, leaving the remainder of the territory to continue ás a township district.
But we do not incline to rest a decision of the case upon this distinction, and frankness requires that we consider the holding in the case cited, as to its other features. The opinion gives prominence to the clause of section 7, of article 1, of the constitution, which makes it “the duty of the general assembly to pass suitable laws to encourage schools, and the means of instruction,” and of section 2, of article 6, which requires that body to “ make such provision, by taxation or otherwise, as, with the income arising from the school trust fund, will secure a thoi'ough and efficient system of common schools throughout the state,” and draws the inference “that the subject 'of common schools is thus declared to be one of a general nature.” “ These schools,” continues the opinion, “ are sustained in part by a trust fund, in which every section, as well as every individual of the state, has a common interest. This is not all; the interest of every section and every individual is to be secured by a thorough and efficient system of schools, and, as if it were to guard against such special and local legislation as we find in this statute, it is expressly declared that such system shall extend ‘ throughout the state.’ ”
It may be conceded that the subject of common schools is one of a general nature. But does it, therefore, follow that everything that relates to common schools must be provided for by a general law? Obviously this would be impracticable. Nor is it apparent that the right of every section and of every individual to enjoy the benefit of the trust fund is more affected by a change of districts caused by a special law than by one brought about by means authorized by a general law. We agree that the trust fund is for the benefit of those who are to be educated. Hence, it is the duty of the general assembly, in obedience to the mandate of the constitution, to make such provision as will give the best attainable opportunity to the student for availing himself of the advantages secured by the fund thus created. If, in the judgment of the general assembly, this can be better done by special legislation with respect *281 to the division of particular territory, than by a general rule,, it is difficult to see that such special provision is inconsistent with the spirit of the requirement, or that it interferes with the general design for providing means for instruction. The means by which territory may be divided into districts does not seem to inhere in the idea of a “ system of schools; ” it does not belong, as an attribute or quality, of such “ system.” Nor can we perceive that the forming of a special school district, as in this act provided, interferes with the working of the “ system of common schools.” Except the discussion 'in the opinion we are considering, this clause has not, so far as we are aware, received judicial notice or construction, and it is, perhaps, not necessary to attempt extended construction here. We may, however, with propriety, venture the suggestion that the “ system” provided for does not necessarily imply a fixed territorial division into districts. A “system” might be established by general rules fixing the character and grading of the schools, the scope of the education intended to be given, the character of the officers who shall control, and the-powers with which they shall be clothed, together with suitable provision for raising the necessary means to meet the general expenses, and for an equitable division of the funds so procured. These are general features, capable of being reasonably made uniform' throughout the state, while the question of division of territory, like that of the erection of school houses, and the procuring of apparatus and other property necessary for the use of the schools, would seem to be so far of local concern merely that special necessities might safely be left to be provided for by special enactments. The kind of school that shall be maintained, and the character of the education which may be received, are of general common concern, to be made uniform in order that the youth of the state may, as far as. practicable, be enabled to receive equal benefit from the trust fund and from the “system” established, while the pi’ecise place where these oppox-tunities shall be afforded sx’e, in their natux-e, local and tx’ansitory, and as to them it woxxld appear not to be necessary to control them absolutely by a rule which would be uniform in its operation throughout the state.
*282 Upon the general subject here discussed, some light is thrown by the decisions of other states. The constitution of the state of California has a provision (section 11, of article 2), identical with section 26 of article 2 of our constitution. In People v. Railroad Co., 43 Cal. 398, the court gives a construction to the clause referred to in consonance with the views hereinbefore expressed, and distinctly holds that “ whether a law is of a general or special nature depends, in a measure, upon the legislative purpose discoverable in its enactment,” and “ that the constitution does not prohibit a special act, because the subject with which it deals might have been the subject of a general law.”
The constitution of the state of Kansas (section 17 of article 2), has a like provision, which is construed in The State v. Hitchcock, 1 Kansas, 178, and in Beach v. Leahy, Treas., 11 Kansas, 23. See also, Gentile v. The State, 29 Indiana, 409; The State v. Tucker, 46 Indiana, 355; The State v. Court of Boone Co., 50 Missouri, 317; The State v. Court of New Madrid, 51 Missouri, 83, and Commissioners v. Shields, 62 Missouri, 247. See also, Ruffner v. Commissioners, 1 Disney, 196.
The decision in The State v. Powers, supra, was made by a majority of the court-, two of the judges dissenting. For the judgment of the concurring judges (as well as for that of their equally learned associates who did not concur,) we entertain the very highest respect, and it is with great reluctance that we feel compelled to announce a conclusion not in harmony with’their decision. But we are of opinion that the case was not correctly decided, and inasmuch as a large number of -school districts in the state have been formed by local enactments similar to the one under review here, and are now existing by virtue of the authority thus given, we feel it our duty to pronounce the law as we believe it to be; especially as it is not apparent that any practical inconvenience will result from such course.
Our conclusion is that the act in question is not clearly in conflict with the constitution, and that the prayer of the petition should be refused.

Petition dismissed.