(Hamilton County Court of Common Pleas.)

STATE OF OHIO, on the Relation of NEW-
TON G. HILDRETH v. THE CITY
OF CINCINNATI et al.

*Dividing annexed territory into wards—*
*Equality of representation—Public Policy.*

Representation by population is the set-
tled policy of the state of Ohio, and under
this policy there should be an approximate
equality of voters in representative districts.
While, perhaps, the legislature may provide
for unequal representation, yet in constru-
ing a statute for the purpose of determining
whether the legislature has in fact so provid-
ed, the court should keep in mind this pol-
icy of the state, and if the statute may be
construed in two ways—one of which will
give approximate equality in representation
and the other will give unequality—that
construction will prevail which gives equal-
ity; therefore held: that sec. 8 of the act of
April 13, 1893, authorizing cities of the first
grade of the first class to annex contiguous
municipal corporations—simply directs that
the board of legislation shall provide by or-
dinance for the division of such annexed
territory into wards under the power given
by sec. 1630 of the Revised Statutes.

SAYLER, J.

Under proceedings duly taken, the city of
Cincinnati annexed the villages of Avondale,
Clifton, Linwood, Riverside and Westwood
under the act of April 13, 1893, as amended
April 24, 1893; Vol. 90, O. L. p. 263, 265.

On February 21, 1896, the Board of Leg-
islation of the city of Cincinnati, passed an
ordinance by which the territory theretofore
annexed and known as the villages of Clif-
ton and Avondale, were organized into a new
ward, known as ward 31; the territory known
as the village of Westwood was attached to
ward 30, and made part and parcel thereof;
the territory known as the village of Lin-
wood was attached to ward 1, and made a
part and parcel thereof; and the territory
known as the village of Riverside was at-
tached to ward 29, and made part and parcel
thereof.

This ordinance was approved by the may-
or of the city on March 2, 1896, and was ad-
vertised according to law on March 2 and 3,
1896.

The plaintiff is a resident of the territory
known as Westwood, and a taxpayer. The
contention on his part is that the passage of
this ordinance is not a compliance with the
terms of the said act providing for annexa-
tion of said municipalities; that this ordi-
nance is void; that on January 3, 1896, there
was regularly introduced and offered in the
Board of Legislation of Cincinnati, an ordi-
nance to divide said municipalities so an-
nexed, into wards in accordance with said

provisions of said act, which ordinance was
on February 21, 1896, by said Board of Leg-
islation, defeated, and the plaintiff prays
that a writ of mandamus may be allowed and
issued to said defendants, requiring the city
of Cincinnati and the Board of Legislation of
said city, to duly pass an ordinance provid-
ing for the division of said annexed munici-
palities into wards of the city of Cincin-
nati, in accordance with law, and to repeal
any ordinance conflicting therewith, etc.

The defendants file an answer in which
they set out the enactment of the act pro-
viding for the annexation of contiguous mu-
nicipal corporations, and its amendment;
that the city took all necessary steps, to
carry out the provisions of said act; the elec-
tion under the same; the proceeding in the
Supreme Court in regard to the constitution-
ality of the act and the regularity of the pro-
ceedings; the further proceedings under the
act and the annexation of the villages of
Avondale, Clifton, Linwood, Riverside and
Westwood on December 31, 1895. The de-
fendants further set out the vote cast in the
various wards of the city in November, 1895;
the lowest vote being 1,111 in the Eighth
ward, and the highest being 3,316 in the
Twenty-third ward (the average vote being
about 2,200); that the vote in Avondale was
1,199; in Clifton, 359; in Linwood, 310; in
Riverside, 436, and in Westwood, 273. The
defendants further set out the ordinance of
February 21, 1896, and aver that it is a valid
ordinance, and that on March 13, 1896, a
member of the Board of Legislation from the
Thirty-first ward was legally elected.

The laws governing municipal corporations
were codified in 1869, under an act entitled
"An act to provide for the organization and
government of municipal corporations,"
passed May 7, 1869 (66 O. L. 149).

By section 407 of said act, it was provided:
"When territory is annexed to any corpora-
tion, or one corporation is annexed to anoth-
er corporation, such territory or corporation
so annexed may be organized into a new
ward or wards, or attached to any existing
ward or wards, as the council may deem
proper."

This section 407 of the act of 1869 was re-
enacted in section 1630 of the Revised Stat-
utes of 1880.

Therefore we have the law existing since
1869 by which power was given to the coun-
cil to organize the annexed territory into new
wards or attach it to existing wards, as it
might deem proper. This law was in force
at the time the act of April 13, 1893, was
passed.

By the 8th section of the act of 1893, it is
provided: "Upon such annexation the
Board of Legislation shall, by ordinance,
provide for the division of such annexed
municipality or municipalities into wards."

And by section 10 it is provided "That all
acts or parts of acts inconsistent with the
provision of this act are hereby repealed."

It is claimed by the plaintiff that this pro-
vision of section eight of the act of 1893,
and by which it is provided that the Board

of Legislation shall, by ordinance, provide for the division of the annexed territory, is inconsistent with the provisions of section 1630, by which annexed territory may be organized into new wards, or attached to existing wards, as council may deem proper, and that therefore section 1630 is repealed by section 10 of the act of 1893, in so far as it relates to cities of the first grade of the first class, and as there is no provision in section 8 authorizing the Board of Legislation to attach any of the annexed territory to existing wards, such authority does not exist, and that such territory must be divided into independent wards.

If this contention be correct, then as Linwood, Riverside and Westwood do not lie contiguous to each other, the Board of Legislation acting under the provisions of section 8, would be compelled to organize Linwood into a ward with 310 voters; Riverside into a ward with 436 voters and Westwood into a ward with 273 voters.

We would then have wards with 310 and 436 and 273 voters respectively, and a ward —the Twenty-third—with 3,316 voters, and other wards with an average of over two thousand voters.

As a result, the 273 voters, the 310 voters and the 436 voters of their respective wards, would have the same power in the Board of Legislation or school board, through their respective members, as the 3,316 voters of the 23rd ward, and as the average 2,200 voters in the respective other wards would have.

It is claimed on the part of the defendants that such division of the annexed territory would be contrary to the policy of the state that representation shall be approximately equal, and that therefore, such cannot be the construction of the statute contemplated by the legislature. And the defendants claim that the true construction of the provision of section 8, is that ward government will be given to the annexed municipalities; that is, that the city shall proceed, under the existing law, section 1630, to divide them into wards, by organizing new wards or by attaching them to existing wards.

That there should be an approximate equality of representation would seem to be supported by 28 At. Rep. 428; 30 At. Rep. 544; 35 N. E. Rep. 157; 73 N. C. 198 and 138 N. Y. 95.

In the People ex rel. v. Canaday, 73 N. C. 198, the court held that an act which provided for the division of a city into three wards; two of which with four hundred voters each and one with 2,800 voters, violated the fundamental principles of the constitution of the state, and was therefore void. This decision was, however, by a divided court, and a dissenting judge said that "there is no general controlling intent in the constitution restraining the legislature from an unequal distribution of political power," and he was of opinion that such act was valid.

The question has been lately very thoroughly considered in the case of Baird et al.

v. Supervisors, etc., 138 N. Y. 95. An act had been passed providing that the supervisors of the counties "shall proceed to divide their respective counties into so many assembly districts as they are entitled respectively to members of assembly under this act." The supervisors of King county divided the county into districts varying from 31,685 voters in one, to 102,805 in another.

The court held that "when representatives are to be apportioned among the population, the fundamental theory is that the apportionment shall be equal" and held that the division so made by the supervisors "was violative of the constitutional requirements, and so void."

In New York, the power is given to the supervisors by the constitution to make such subdivision. Ib. 106.

In Ohio, the power to establish wards is given by statute:

"Rules and regulations for local municipal government of cities and villages are subjects of and are as clearly within the scope of legislation, as are those which concern the state at large." 29 Ohio St. 112, and in 52 Ohio St. 419 the court say, on page 453, that the enlargement of the territorial boundaries of municipal corporations by annexation is a legitimate subject of legislation "and hence the extent to which such legislation shall be enacted both with respect to the conditions and circumstances under which the annexation may be had, and the manner in which it may be made, rests wholly in the discretion of the general assembly, except in so far as limitations upon its power are contained in the constitution."

I find no provision in the constitution which expressly limits the power of the legislature to provide for unequal representation. Yet it is undoubtedly true that representation by population is the settled policy of the state of Ohio, and that under this policy there should be an approximate equality of members in representative districts.

I rather think, under 29 Ohio St., and 52 Ohio St. supra, that the legislature may provide for unequal representation; but in construing a statute for the purpose of determining whether the legislature has in fact so provided, I think the court should keep in mind this policy of the state, and if a statute may be construed in two ways—one of which will give unequal representation, and the other will give approximate equality in representation, that construction will prevail which gives equality, and is in compliance with such policy.

I hardly think the remark of Judge Gohlson, in 11 Ohio St. 237, is in point. He speaks of "public good or public policy," which means political expediency, and about which there may be every variety of opinion. But the policy of representation by population is one of the elements of the system of government of the state, not a question of political expediency.

Considering the provisions of section 8 of the act of 1893, in the light of this policy

of equality in representation, what is its proper construction?

By section 1630 full power is given as to annexed territory; such territory may be organized into a new ward or wards, or attached to existing wards. The word "organize" is comprehensive; new wards are specifically provided for; and that the equality or representation may be maintained, the territory may be attached to existing wards.

By section 8 it is simply provided that the Board of Legislation shall, by ordinance, provide for the division of such annexed municipality or municipalities into wards. Does this necessarily take way the power conferred by section 1630? Is not this simply a direction that the board shall provide, by ordinance, for the division of the territory into wards, under the power given by 1630? If such construction is given to the provision, an approximate equality of representation will be preserved, and the settled policy of the state complied with.

If, on the other hand, this provision is construed so as to require the annexed municipalities to be orgaized into new wards—and it will be noticed that there is no provision as to new wards—then great inequality in representation will result, and the policy of the state will be violated.

There is no specific repeal of section 1630, and repeals by implication "will not be recognized unless the repugnancy between the prior and subsequent act of legislation be necessary and obvious, and so great that the two cannot be reconciled by any fair course of reasoning." 10 Ohio St. 27.

Under this rule, the provisions of section 8 will be construed, if it can by fair reasoning, in such manner as to preserve section 1630 in force.

There is a presumption that the division actually made in any case was a proper one, and in full compliance with the duty imposed on the board. 138 N. Y. 112.

In doubt as to the proper construction of section 8 of the act of 1893, I think the safer course is to so construe it as to preserve the policy of the state as to equality in representation, and I will therefore hold that section 1630 is in full force and that the Board of Legislation had authority to pass the ordinance of February 21, 1896, and that said ordinance is valid.

The bill will be dismissed.

L. W. Goss and John Marckworth, for relator.

Fred. Hertenstein, corporation counsel, for defendants.