Matthias, J.
The discussion and decision of the legal questions involved in this- case must be based upon the. following facts established by the record: The mayor of the city of Elyria on January 11, 1916, appointed R. F. Vandemark, defendant in error, director of public safety. Vandemark duly qualified as provided by law and entered upon the discharge of his duties. The salary of such officer .was fixed by ordinance of the city at $720 per annum, payable semimonthly from the city treasury. The city of Elyria under the last federal census had a population of less than 20,000. The council of the city on January 10, 1917, duly *368 passed an ordinance, providing that the office of director of public safety be merged with that of the director of public service, and that one director be appointed for and assigned the duties of the departments so merged. Such ordinance became effective February 11, 1917. The mayor of the city did not appoint a director of the merged departments, and the defendant in error fontinued to perform the duties which had theretofore devolved upon the director of public safety and continued to discharge such duties until he resigned December 31, 1917. The council refused to appropriate funds for his salary after February 11, 1917, and he received no compensation for his services subsequent to that date.
The ordinance to which we have referred was passed pursuant to the provisions of Section 4250, General Code, as amended 106 Ohio Laws, 483. The mayor is thereby authorized to appoint the director of public service and the director of public safety. The section then provides that “In cities having a population of less than twenty thousand, the council may by a majority vote merge the office of director of public safety with that of public service, one director to be appointed for the merged department.'”
Said, ordinance provided that the office of director of. public, safety be merged with the office of director of public service, and that one director be appointed for the departments so merged, who should perform such duties as are required by law of the director of public safety and the director of public service. If the provisions of the General *369 Code above referred to, pursuant to which said ordinance was enacted, constituted a valid and constitutional law, then the passage of such ordinance served to effect a valid merger of the two offices specified into on$ office, and consequently abolished the separate offices of director of public service and director of public safety in the city of Elyria, and from the date such ordinance became effective there was no longer such an office in the city of Elyria as the director of public safety.
We cannot concur in the view adopted by the court of appeals and urged in argument in this .court by counsel for the defendant in error that because of the fact that in this instance a director for the merged departments was never appointed as contemplated by the provisions of the act of the general assembly under consideration, Vandemark would continue in office until the date of his resignation, December 31, 1917. The authority to create an office and the power to abolish the same are coexistent, and hence the tribunal authorized to create an office may abolish such office at any time it chooses, either during or at the end of the term of any incumbent of such office. The incumbent would not be entitled to compensation thereafter, for he could not be a de facto officer of an office which was no longer in existence. It is well settled in this state that when an office is abolished by duly-constituted authority the incumbents thereof cease to be officers, for there can be no incumbent without an office. State, ex rel. Attorney General, v. Covington et al., 29 Ohio St., *370 102; The State v. Brown, 38 Ohio St., 344, and State, ex rel. Attorney General, v. Jennings et al., 57 Ohio St., 415.
It therefore becomes necessary to determine the constitutionality of the provisions of Section 4250, General Code, as amended 106 Ohio Laws, 483, wherein the legislature attempted to classify cities upon a basis of population and make provision for the method of government of one class of cities different from that of others.
No classification of cities or villages of the state was made by the provisions of the Constitution of 1851, the only provision which may be considered as having reference thereto being Section 6, Article XIII thereof, which is: “The general assembly shall provide for the organization of cities, and incorporated villages, by general laws.” Classification of municipalities was made by' the legislature. Originally that classification was only as follows: “Cities of the first class and cities of the second class; incorporated villages, and incorporated villages for special purposes.” Thereafter further classifications were made by the legislature, the number of classes and grades of cities being constantly increased, and the limitations of each grade or class constantly decreased, until the legislation for the government of municipalities became special in its nature, although still under the guise and in the form of general laws. Finally these conditions became so obnoxious that this court in the case of State, ex rel. Knisely et al., v. Jones et al., 66 Ohio St., 453, in which the issue of the constitutionality of such legislation was *371 clearly presented, declared that a consideration of the bckly of the laws of the state upon the subject showed the legislative intent to substitute isolation for classification, and held such legislation to be repugnant to Section. 1, Article XIII of the Constitution, which ordains that “The general assembly shall pass no special act conferring cor-porate powers.” The court in that case did not determine whether the provisions' of Section 6, Article XIII of the Constitution of 1851, should be deemed and held to be an exclusive classification of municipalities into' cities and villages, but contented itself with the expression of a query upon that proposition.
The constitution adopted in 1912 did not leave to the legislature the matter of classification of municipalities. The constitutional convention retained the provision that “General laws shall be passed to provide for the government of cities and villages,” substantially as in the former constitution, but in furtherance of its manifest and clearly expressed purpose to take from the legislature the power theretofore exercised by it relative to the government of the municipalities of the state and to confer such powers of local self-government directly upon the municipalities themselves the constitution provides in Section 1, Article XVIII, that “Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law.” It .is to be observed that the *372 constitutional convention not only did not confer any power whatever upon the legislature to make any classification of municipalities, but it denied the legislature such authority by retaining and exercising that jurisdiction itself. It thereby withheld that subject absolutely and entirely from legislative control and permitted it to be no longer a matter of statutory jurisdiction. The general assembly has no power to enlarge or limit a jurisdiction specifically conferred by the constitution. (The Cincinnati Polyclinic v. Balch, 92 Ohio St., 415.) It seems equally clear that a jurisdiction assumed and exercised by the constitution itself cannot be exercised also by the legislature in the absence of authority conferred upon it so to do by express and explicit provision of the constitution.
It having been declared by the constitution that the municipalities of the state should be classified upon the basis of population into cities and villages, it must be presumed that it was intended that there should be no further classification for the purpose of legislation affecting municipal government. Principles long recognized and frequently applied - — most recently in the case of Fulton, Secretary of State, v. Smith, 99 Ohio St., 230 — have peculiar application to the issue under discussion. The express and avowed purpose of such constitutional provision was to prevent such abuse of legislative power as was denounced and declared invalid in State, ex rel. Knisely et al., v. Jones et al., supra. No hardship is thereby imposed upon the municipalities of the state, for ample relief is *373 provided by the constitution itself for cities not satisfied with the provisions of the general laws of the state prescribing governmental machinery, and there can be no longer the reason or excuse for such legislation as gradually led to the wanton abuse of legislative authority manifested prior to the adoption of the new constitution.
For the reasons above set forth the judgment of the court of appeals is'affirmed.'
Judgment affirmed.
Nichols, C. J., Jones, Johnson, Wanamaker and Robinson, JJ., concur.
Merrell, J., not participating.